UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| WALTER SCOTT PETERSON,<br>Plaintiff<br><br>V.<br><br>UNUMPROVIDENT CORPORATION,<br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY, and<br>HILB, ROGAL AND HAMILTON<br>COMPANY,<br>Defendants | CIVIL ACTION NO. 302CV01844CFD |

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Nature and Status of Proceedings

In this case plaintiff, Walter Scott Peterson, M.D., claims that he is entitled to benefits pursuant to a disability income policy of insurance ("the Policy") issued by the defendant, the Provident Life and Accident Insurance Company ("Provident").[1] Dr. Peterson claims that he is totally disabled from performing his occupation as an ophthalmic surgeon because the stress associated with performing cataract and implant surgery will aggravate his coronary artery disease. After reviewing his claim Provident determined that Dr. Peterson did not meet the definition of total disability in the Policy.

In this case, along with other state law claims, Plaintiff asserts claims for violation of the Connecticut Unfair Trade Practices Act ("CUTPA") Conn. Gen Stat. § 42-110 et seq. based on

---

[1] Provident is a subsidiary of UnumProvident. In his Complaint and Memorandum in Support of his Motion to Compel, plaintiff names Provident and UnumProvident collectively as "UnumProvident." Because they are separate corporations and because the plaintiff's discovery was only directed to Provident, Provident will address the issues in this motion to compel.

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") Conn. Gen. Stat. §38a-816 et seq. However, recognizing that the benefits under the Policy may have been provided pursuant to an employee welfare benefit plan, in Counts IV and V, plaintiff asserts claims under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1132(a)(1)(B).

The issue in this case is whether Dr. Peterson, due to injury or sickness, is unable to perform the material and substantial duties of his occupation, and is thus totally disabled under the terms of the Policy. In response to plaintiff's discovery requests, Provident has produced its entire claim file, application file and underwriting file which include all of the documents regarding the issuance of the Policy and all of the documents on which Provident based its decision to deny Dr. Peterson's claim. Provident has also produced the UnumProvident Customer Care Claims Manual that includes guidelines for claims handling.

Now, based solely on a blanket assertion in his complaint that UnumProvident's "actions constitute an unfair claims settlement practice in violation of the Connecticut Unfair Insurance Practices Act" Dr. Peterson asks this court to order Provident to produce 5 years worth of documents which include affidavits, deposition transcripts, trial transcripts, lawsuits, administrative complaints, written statements, investigations, findings and judgments by state or federal agencies, from across the country about "any allegation" that Provident a) pressured its employees to deny claims; b) set targets and goals for the rate or number of claim denials; c) provides financial incentives to any person to terminate claims for disability benefits; and/or d) Provident's handling of claims for disability benefits. Plaintiff claims that he is entitled to this information in order to establish that that this is not an isolated instance of unfair claim settlement practices, but that Provident has unfair claims settlement practices in general.

This motion should be denied for each of the following reasons that will be addressed in detail in this memorandum:

1. In filing this Motion to Compel, plaintiff asks this court to make Provident sort through and produce 5 years worth of information to substantiate a claim that may not even be viable in this case. Plaintiff obviously believes that there is enough evidence that the Policy is part of an ERISA plan such that it is appropriate to plead ERISA in the alternative in his Complaint. If this Policy is part of an ERISA plan, plaintiff cannot state a claim under CUTPA or CUIPA because ERISA provides the sole remedy for claims for benefits and preempts any claim under these statutes.

2. Plaintiff has not given this Court any reason to find that the information sought in this Motion to Compel is relevant to this case. While the plaintiff asks this court to order Provident to produce all of this information about "pressuring employees", or "financial targets", plaintiff has no proof that that anyone who worked on Dr. Peterson's claim felt "pressured," for what ever reason, to deny it. In fact, plaintiff does not give this Court even the slightest hint in its Motion to Compel as to what unfair claim settlement practices Provident engaged in when it denied this claim. Simply denying a claim is not an unfair claims settlement practice. Where plaintiff does not, or cannot, articulate what unfair practices occurred in the handling of his claim, Provident should not be compelled to produce information about other claims and other litigation. Nor can plaintiff show that documents regarding "allegations" about Provident from across the country have any relevance to, or will lead to the discovery of, admissible evidence in a CUPTA or CUIPA claim in Connecticut.

3. Plaintiff's requests are overly broad and unduly burdensome. They require Provident to go through every piece of litigation and every state investigation across the country

for the past 5 years and find out of if there was "any allegation" that Provident "pressured employees to deny claims", set "financial targets" or "provides incentives to deny claims." This requires a manual nationwide search. Plus, given that plaintiff has asked for documents where there have been "allegations" about "Provident's handling of claims for disability benefits," it virtually requests production of every lawsuit involving Provident across the country for the past 5 years. This is simply not reasonable. It is overburdensome and will not lead to the discovery of relevant or admissible information.

Provident submits this Memorandum and the Affidavit of Marci Brokish in Opposition to Plaintiff's Motion to Compel Discovery. Ms. Brokish's affidavit is attached as Exhibit A.

### Statement of Facts

The plaintiff, Dr. Walter Scott Peterson, is an ophthalmologist in Waterbury, Connecticut. (Complaint, ¶1). He specialized in cataract and implant surgery. (Complaint, ¶10). On or about October 13, 1986, Dr. Peterson applied for disability insurance with Provident. (Complaint, ¶7). Pursuant to the application, his employer a professional corporation called Eye Associates of Waterbury, later renamed Opticare, Inc., paid 100% of the premiums for this policy. Dr. Peterson is an employee of Opticare, Inc. (Complaint, ¶18). The Policy became effective on December 1, 1986.

Pursuant to the Policy, "total disability or totally disabled means that due to Injuries or Sickness: (1) you are not able to perform the substantial and material duties of your occupation; and (2) you are receiving care by a Physician which is appropriate for the condition causing the disability." (Complaint, ¶13). The Policy also provides for residual disability benefits. (Complaint, ¶15).

In July 2000, Dr. Peterson had a heart attack, for which he was only hospitalized for two days. By the time he had submitted his disability claim to Provident on October 25, 2000, Dr. Peterson had returned to work, seeing patients in the office, but not performing surgery. Before submitting his disability claim, Dr. Peterson performed surgery for 5 hours, one morning a week. He claims that he is totally disabled because he is unable to perform the one morning of surgery a week because the stress that he experiences when he performs surgery will worsen his coronary disease.

After Dr. Peterson submitted his claim, Provident has a medical consultant, a board certified cardiologist, review his medical records. Provident's medical review of Dr. Peterson's claim established that

> "the patient has well documented coronary disease with no current documentation of angina or provocable angina. The medical record does not support that the patient can no longer perform his full-time surgical work. There is no data presented that supports that he falls within a high risk group for a cardiovascular event. There is no data presented that would support that this patient is at high risk for mental stress induced ischemia. It must be noted that mental stress induced ischemia is not common in patients with no exercised induced ischemia. Objective data in the medical record would support that the patient should be able to perform a light occupation."

Based on this evaluation, and all of the information in Dr. Peterson's claim file, Provident denied Dr. Peterson's claim on March 6, 2001 on grounds that he did not meet the definition of total disability under his policy. (Complaint, ¶25) A true copy of the letter denying the plaintiff's claim is attached as Exhibit B. That decision was upheld on appeal in March 2002. A true copy of the appeal decision is attached as Exhibit C. The plaintiff filed his complaint in this action on October 22, 2002.

## Argument

1. <u>Plaintiff's CUTPA And CUIPA May Be Preempted By ERISA.</u>

The entire purpose for the information at issue in this Motion to Compel is the plaintiff's effort to establish that Provident engaged in unfair claims settlement practices thus violating CUIPA and CUTPA. However, in Count IV and Count V of his complaint, Dr. Peterson specifically alleges that "[i]f the Policy is not determined to be an individual insurance contract ... the Policy is subject to and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1)." Dr. Peterson alleges that Provident violated ERISA, 29 U.S.C. § 1132 (a)(1)(B) by terminating his disability payments under the Policy. Then in Count V, plaintiff claims that UnumProvident is a fiduciary with respect to the Policy within the meaning of ERISA 29 U.S.C. §1002(21)(A), and that by denying Dr. Peterson's claim for benefits, UnumProvident breached its "fiduciary duty that it owed to Dr. Peterson." (Complaint ¶54-56).

If the Policy was provided to Dr. Peterson as part of an ERISA plan as the plaintiff alleges in Counts IV and V of his Complaint, it is undisputed that as a matter of law, Dr. Peterson cannot state a claim under CUTPA or CUIPA. <u>Case v. Hospital of St. Raphael</u>, 38 F.Supp.2d 207, 208-209 (D. Conn. 1999)(CUTPA claims preempted by ERISA where plaintiff claimed denial of disability benefits). State law claims for unfair trade practices are preempted by ERISA, whether based on common law or by statute, and regardless of whether or not the statute is in the insurance code or in a state's Deceptive Trade Practices Act. <u>Pilot Life Insurance Co. v. Dedeaux</u>, 481 U.S. 41, 51-57 (1987).

Despite the fact that plaintiff acknowledges in his Complaint that the Policy may have been provided to Dr. Peterson as part of an employee welfare benefit plan, plaintiff seeks

voluminous discovery from Provident in an attempt to support a claim that may not even be viable in this case. As a minimum, Provident requests that this Court refrain from making any decision on the discovery requests at issue in the plaintiff's Motion to Compel until the parties have submitted supplemental briefs to this Court to address the issue of whether the Policy falls within the scope of an ERISA plan.[2] If it does, there is no purpose for the discovery that is the subject to this Motion to Compel. The only issue in a claim under ERISA is whether the plaintiff is entitled to benefits under the plan. Because ERISA does not provide for any extra contractual damages, discovery about any unfair claims settlement practices is not relevant. See Drinkwater v. Metropolitan Life Insurance Company, 846 F.2d 821 (1st Cir. 1988).

To the extent that the Court prefers to act on this Motion to Compel at this time, as set forth below, plaintiff has failed to establish that the requested discovery is relevant to this case. In addition, it is overly broad and unduly burdensome.

1. The Discovery Requested by the Plaintiff in this Motion to Compel is Irrelevant and Not Likely To Lead To The Discovery of Admissible Evidence.

Plaintiff has moved to compel responses to interrogatory No. 8 and requests for productions no. 15-20. Plaintiff's discovery requests and Provident's responses are attached as Exhibit D.

In Interrogatory no. 8, plaintiff requested:

Interrogatory No. 8: From 1998 to the present, identify all persons including, without limitation, any claims handler, health care provider or third party, employed, retained, or used by Provident who have discussed, investigated, reviewed, made comments, suggestions, recommendations or decisions concerning applications for disability benefits and have provided statements under oath including, without limitation, any statements contained in affidavits, depositions transcripts, or trial testimony, that concern, refer or relate to any

---

[2] Provident has issued a Rule 30(b)(6) deposition notice and subpoena duces tecum to plaintiff's employer to obtain information about whether the Policy is part of an ERISA plan. That deposition is scheduled for March 31, 2004.

allegation that Provident: (a) pressured its employees and/or doctors to deny or terminate claims for disability benefits; (b) set targets, goals or projections regarding the rate or number of denial of claims for disability benefits; and/or (c) provides financial incentives to any person to deny or terminate claims for disability benefits.

In Requests for Production no. 15 –20, plaintiff asks Provident to produce:

Request No. 15: From 1999 to the present, produce any documents that concern, refer or relate to: (a) any targets, goals or projections regarding the rate or number of denial of claims for disability benefits; or (b) the review, evaluation, management, supervision and/or handling of claims for disability income benefits including, without limitation, any financial incentives Provident provides to any person to deny or terminate claims for disability benefits.[3]

Request No. 16: From 1999 to the present, produce any documents, including any affidavits, deposition transcripts or trial transcripts of any person including, without limitation, all claims handlers, health care providers or third parties, employed, retained, or used by you, who discussed, investigated, reviewed, made comments, suggestions, recommendations or decisions concerning applications for disability benefits that concern, refer or relate to: (a) any allegation that Provident pressured its employees and/or doctors to deny or terminate claims for disability benefits; (b) any allegation that Provident set targets, goals or projections regarding the rate or number of denial of claims for disability benefits; (c) any allegation that Provident provides financial incentives to any person to deny or terminate claims for disability benefits; and/or (d) Provident's handling of claims for disability benefits.

Request No. 17: From 1999 to the present, produce any lawsuits or administrative complaints that have been filed by any person including, without limitation, any complaints filed by any state or federal agency, against Provident that concern, refer or relate to: (a) any allegation that Provident pressured its employees and/or doctors to deny or terminate claims for disability benefits; (b)

---

[3] Although plaintiff may not have liked the answer, Provident did respond to Interrogatory No. 8 and Request No. 15 as follows:
> Notwithstanding and without waiving the foregoing objections, it is not a practice of Provident to set claim termination goals or objectives or put pressure on claims personnel to inappropriately close claims. Provident has traditionally estimated claim results on a monthly basis. The purposes of these estimates is to project a business plan into the future, as any publicly traded company must do. The same is done for the underwriting area, for sales, for human resources, for the investment operation, and for every other part of our Company. These estimates are not intended to present "targets" for claims action. Instead, our claim numbers are the result of whatever our fair, thorough and objective evaluation in each case determines.

With respect to Request No. 15, Provident has produced the UnumProvident Customer Care Claims Manual, which sets forth guidelines for claims handling. UnumProvident does not provide financial incentives to its employees to deny claims. Nor does it set "targets" or "rates" for claim denials. Responsive documents to Request No. 15 have been produced.

any allegation that Provident set targets, goals or projections regarding the rate or number of denial of claims for disability benefits; (c) any allegation that Provident provides financial incentives to any person to deny or terminate claims for disability benefits; and/or (d) Provident's handling of claims for disability benefits.

Request No. 18:   Produce any and all written statements provided by Dr. Fergal McSharry, Diane McGinnis, Angelique Brackett, Gina Hartley, Michelle Payne or any individual identified in response to Interrogatory Number 2 or identified in Request for Production Number 4, that concern, refer or relate to: (a) any allegation that Provident pressured its employees and/or doctors to deny or terminate claims for disability benefits; (b) any allegation that Provident set targets, goals or projections regarding the rate or number of denial of claims for disability benefits; (c) any allegation that Provident provides financial incentives to any person to deny or terminate claims for disability benefits; and/or (d) Provident's handling of claims for disability benefits.[4]

Request No. 19:   Produce any documents relating to any investigation by a state or federal agency that concern, refer or relate to: (a) any allegation that Provident pressured its employees and/or doctors to deny or terminate claims for disability benefits; (b) any allegation that Provident set targets, goals or projections regarding the rate or number of denial of claims for disability benefits; (c) any allegation that Provident provides financial incentives to any person to deny or terminate claims for disability benefits; and/or (d) Provident's handling of claims for disability benefits.

Request No. 20:   Produce any documents that relates to any finding or judgment rendered by any state or federal agency or court that Provident: pressured its employees and/or doctors to deny or terminate claims for disability benefits; (b) any allegation that Provident set targets, goals or projections regarding the rate or number of denial of claims for disability benefits; (c) provides financial incentives to any person to deny or terminate claims for disability benefits; and/or (d) that Provident has engaged in unfair insurance practices or unfair competition.

Provident objected to these all of these requests as follows:

Objection:  Provident objects to this request on the grounds or to the extent that (1) it is vague, ambiguous, compound and unintelligible; (2) it is overly broad, unduly burdensome and oppressive, and particularly with regard to time and scope and that such documents would contain material unrelated to this claim; (3) it seeks information which is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence; (4) it seeks privileged, personal, and confidential information of third parties to which our policyholders have an expectation of privacy; and, (5) it

---

[4]   Dr. Fergal McSharry, Dianne McGinnis, Angelique Brackett, Gina Hartley, and Michelle Payne were not involved in the handling of Dr. Peterson's claim. These individuals are the so-called whistle blowers, some of whom gave interviews on "60 Minutes" and "Dateline" in the fall of 2002.

seeks information protected by the attorney client and/or attorney work product privileges. Furthermore, under the authority of <u>State Farm v. Campbell</u>, 123 U.S. 1513 (2003), as well as established principles of relevancy and the scope of permissible discovery, the requested discovery is improper because it seeks information regarding alleged conduct that bears no relation or nexus to the harm allegedly suffered and/or the discovery improperly seeks information that pertains to alleged "out-of-state" conduct.

Provident's objection to Interrogatory No. 8 and Requests for Production Nos. 15-20 is appropriate.

Under Rule 26(c) of the Federal Rules of Civil Procedure, discovery may be limited when it goes beyond the bounds of the material issues in controversy. <u>Life Music Inc. v. Broadcast Music Inc.</u>, 31 F.R.D. 3 (D.C.N.Y. 1962). The discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the institution of Rule 1 that they "be construed to secure the just, speedy, and inexpensive determination of every action." To this end, the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process. <u>Gonzales v. National Broadcasting Company</u>, 155 F.3d 618, 626 (2d Cir. 1998). Discovery that would properly be characterized as a fishing expedition, causing needless expense and burden to all must be denied. Allowing such discovery would run counter to the important, but often neglected Rule 1 of the Federal Rules of Civil Procedure. <u>North River Ins. Co. v. Greater New York Mut. Ins.</u>, 872 F.Supp. 1411, 1412 (E.D.Pa. 1995).

Here, plaintiff asks this Court to order Provident to produce, from 1999 to the present:

- A list of persons who have made statements in affidavits, deposition transcripts, or trial testimony (Int. No. 8);

- Affidavits, deposition transcripts or trial transcripts (Req. No. 16);
- Lawsuits or administrative complaints (Req. No. 17);
- Written statements by certain persons (not involved in this claim) (Req. No. 18));
- Investigation by a state or federal agency ( Req. No. 19);
- Any finding or judgment rendered by any state or federal agency or court (Req. No. 20);

where "any allegation" was made that Provident:

    a.)    Pressured employees to deny claims;

    b.)    Set targets for the rate of the denial of claims;

    c.)    Provides financial incentives for the denial of claims; and/or

    d.)    Provident's handling of claims for disability benefits.

Plaintiff claims that he is entitled to all of this information, over a 5 year time period, from all over the country, in order to prove that Provident engaged in "unfair claim settlement practices with such frequency as to indicate a general business practice." Thus, it appears what plaintiff is claiming is that Provident did not have a legitimate reason to deny Dr. Peterson's claim, thus the denial must be part of a general business practice where employees are pressured to deny claims to meet financial targets. Plaintiff provides this Court with no proof that is what happened in Dr. Peterson's claim. While plaintiff asks this Court to order production of statements, affidavits, trial transcripts, etc., plaintiff provides this Court with no evidence that anyone who made the decision to deny Dr. Peterson's claim felt pressured for any reason to deny his claim. Instead, Exhibits A and B to this Memorandum establish that Provident denied Dr. Peterson's claim because it did not find that Dr. Peterson's coronary disease precluded him from performing 5 hours of cataract surgery a week.

And, while plaintiff is keen to obtain discovery from all over the country about other cases, other claims, and other witnesses in order to prove a general business practice, plaintiff does not tell this Court what unfair claim settlement practice Provident engaged in the handling of his claim. Nowhere in his Memorandum in Support of his Motion to Compel does Dr. Peterson state what unfair acts Provident engaged in when handling his claim. Plaintiff simply says in his Memorandum at p.2 "[a]ll of these claims against UnumProvident are based on UnumProvident's denial of Dr. Peterson's application of long-term disability benefits." A simple denial of an insurance claim, without more, is not enough to establish a violation of CUIPA. Conn. Gen. Stat. §38a-816(6). A breach of contract is not enough to establish a violation of CUTPA. Boulevard Associates v. Sovereign Hotels, Inc., 72 F.3d 1029 (2nd Cir. 1995)(and cases cited therein)(a simple breach of contract does not offend public policy and is therefore insufficient to establish a violation of CUTPA).

Thus, in arguing that he should be entitled to discovery about other claims and lawsuits to show a general business practice, Dr. Peterson has put the cart before the horse. Despite the fact that Dr. Peterson has had the entire claim file and claims manual in his possession for months, plaintiff does not, or cannot, articulate what alleged unfair claims settlement practice Provident engaged in when it denied his claim. Plaintiff cannot establish a CUIPA case by arguing that the defendant engaged in unfair and deceptive claims settlement practice in other cases when he has not established, or even articulated, what unfair claims settlement practices that occurred in his own case. Where plaintiff does not articulate improper claims handling in his own case, evidence of what happened in other cases is irrelevant.

What this boils down to is that plaintiff asks this Court to order Provident to produce voluminous documents to prove a "general business practice" of unfair claims settlement

practices, but plaintiff has not identified what unfair claim settlement practice occurred in his case. Plaintiff has given this Court no proof that anyone who made the decision at Provident to deny Dr. Peterson's claim was "pressured," for any reason, to deny it. Plaintiff seeks documents about "allegations" in other claims and cases when he has not given the Court the slightest basis to conclude that those "allegations," or any unfair claims settlement practice, occurred in this case. Plaintiff has not established that the voluminous discovery requested is relevant to his CUIPA and CUTPA claim.

In addition, while discovery must not only be relevant to the case, it must also be reasonably calculated to lead to the discovery of admissible evidence. F.R.C.P. 26 (b)(1). Here, plaintiff seeks discovery about certain "allegations" about Provident. It wants Provident to produce transcripts, affidavits, statements, lawsuits, judgment where these "allegations" were made. The fact that certain allegations were made about "pressure to deny claims" or "financial incentives" does not mean that they occurred. Plaintiff claims that it needs this information to show a "general business practice". However, the simple fact that there have been certain "allegations" in complaints, affidavits, and/or statements in other lawsuits, will simply establish that there have been disputes about an insured's entitlement to benefits under any number of Provident policies for any number of reasons. Therefore, any allegations contained in a complaint, statement, affidavit or deposition are simply that; unproven allegations. This information will not shed any light on whether Provident has an alleged general practice of unfair claim settlement practices. And it will not show that this case was part of a so-called general practice of unfair claim settlement practices.

Furthermore, Defendant's objection based on the U.S. Supreme Court decision in State Farm Mut. Auto. Ins. Co. v. Campbell, 123 S.Ct. 1513 (2003) was appropriate. The State Farm

decision limits the scope of discovery as well as admissible evidence. State Farm involved a claim of a scheme to accomplish fiscal goals by capping payouts of claims company wide, which involved actions to avoid paying claims regardless of their validity. Campbell v. State Farm Mut. Auto. Ins. Co., 65 P.3d 1134, 1143, 1149 (Utah 2001). The trial court allowed expert testimony regarding these topics and evidence regarding the handling of other claims throughout the country. The Supreme Court held that "[a]lthough evidence of other acts need not be identical to have relevance," the Utah court erred because evidence pertaining to claims that had nothing to do with the circumstance of the plaintiff's claims were introduced at length. State Farm, 123 S.Ct. at 1523. Plus, the Supreme Court found that "a State cannot punish a defendant for conduct that may have been lawful where it occurred. Id. at 1522. "Nor, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." Id.

Plaintiff here has requested discovery about claims and lawsuits from across the country. Plaintiff makes no effort to tailor its requests to circumstances in this case (denial of a cardiac disability claim where the insured working full time in his occupation). Plaintiff's requests seek discovery of information from cases that having nothing in common with the plaintiff's case, presumably except for the "allegations" of improper conduct. Provident's disability claims involve different claimants with different occupations, different incomes, different types of policies, different medical conditions, different circumstances precipitating the claims, different motivations to claim disability, different information available through claim investigation, different and/or varying levels of impairment, if any, and different reasons for paying and/or denying the claim. Thus, by making these discovery requests, plaintiff seeks information about

claims that have no nexus to Connecticut, and no similarity whatsoever to this claim. This discovery will not yield relevant nor admissible information in a CUIPA or CUPTA claim.

Plaintiff's belief that the scope of discovery, being broader than the scope of admissible evidence at trial distinguishes this case from State Farm is unsupported. In support of his argument plaintiff cites Librado v. M.S. Carriers, 2003 WL 21075918 (N.D.Tex. 2003) (attached to Plaintiff's Brief as Exhibit 2). However, even in that case, the District Court held that in order to prove relevancy the circumstances surrounding other claims must be similar enough such that would lead to the discovery of substantially similar occurrences.

Finally, plaintiff cites, Shapiro v. Paul Revere Life Ins. Co., 1997 WL 601430 (N.D. Cal. 1997) (attached to plaintiff's Brief as Exhibit 3) as support for its argument that the information sought is relevant. Plaintiff's reliance is misplaced. Shapiro involved requests for internal company documents regarding the implementation, development or changes to claim handling policies and procedures. Id. at *1. Internal company documents are a far cry from complaints, statement, transcripts and judgments from lawsuits all across the country regarding a variety of factually dissimilar claims. Here, Provident has already produced its Customer Care Claims Manual.

2.     The Information Sought Is Overly Broad and Unduly Burdensome.

Where plaintiff has not shown reasonable grounds to support the relevancy of this information, and discovery costs faced by the defendant are substantial, this discovery should not be granted. Issac v. Shell Oil Co., 83 F.R.D. 428, 432 (D.C. Mich. 1979).

Interrogatory Number 8 and Requests 15-20 require a Provident to go through all of Provident's files to produce all complaints, statements, affidavits, transcripts, and judgments regarding certain allegations in litigation against Provident across the country, for the past five

years. In addition, although the discovery requests are directed to Provident, plaintiff defines Provident in its discovery requests to mean:

> "Provident and all of its subsidiaries, divisions, subdivisions, offices, joint ventures, parent companies, or corporations, affiliates, predecessors and successors, including but not limited to UnumProvident Corporation, Provident Life and Casualty, Provident Companies, UnumProvident Corporation, Paul Revere Corporation and Genex Services, Inc…"

Thus, under plaintiff's requests not only must Provident search its own records for documents pertaining to these allegations, but it also has to search records relating to other UnumProvident subsidiaries (Unum, Paul Revere) as well.

This discovery, if ordered, would require the retrieval of all litigation files, pending and closed across the country over the past 5 years, and a review of the entire file for all statements, transcripts, affidavits, etc., and the names of the person giving it regarding the certain "allegations" plaintiff has requested. The files will also need to be reviewed to determine whether there was a ruling or judgment to determine whether it contained any language fitting the description in the requests. Plaintiff has also asked for documents where there has been any allegations about "Provident's handling of claims for disability benefits." This would virtually mean production of nearly every affidavit, deposition or trial transcript, complaint or judgment in every litigation, state insurance department review, or consumer complaint across the country over the past 5 years. As set forth in the affidavit of Marci Brokish the amount of time required and the cost of this production is extraordinary. Plus, this massive undertaking will not shed any evidence relevant to this claim since the subject of this discovery arises in circumstances completely different from this case. For each of these reasons, the plaintiff's Motion to Compel should be denied.

Should the Court determine that Provident must produce some of this information, this Court at a minimum, should bifurcate these claims and order that discovery on the

CUTPA/CUIPA claim not proceed until the underlying claim is resolved Gomez v. Allstate Ins. Co., No. CV95049816S (May 17, 1995) (attached as Exhibit E). This Court should also substantially limit the breadth of these requests to lawsuits involving disability claims under policies issued by the Provident Life and Accident Insurance Company only, in Connecticut, that involve cardiac claims. However, even with this limitation, a time consuming and expensive search will be necessary.

Because the information requested is unlikely to be relevant or admissible (especially in light of the plaintiff's ERISA claims) to the CUIPA or CUTPA claims this Court should order plaintiff to pay the costs associated with the production of this discovery. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978)("[a party] may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' including orders conditioning discovery on the requesting party's payment of the costs of discovery.") In cases involving extensive and expensive discovery requests like this, the court may shift the cost of discovery production to the requesting party.

Several factors weigh in favor of shifting costs to the plaintiff in this case. The less specific the requesting party's discovery demands, the more appropriate it is to shift the costs of production to that party. Rowe v. William Morris, 205 F.R.D. 421, 429 (S.D.N.Y 2002)(where a party multiplies litigation costs by seeking expansive rather than targeted discovery that party should bear the expense of production.) Id. at 430. Here, plaintiff has propounded very broad discovery requests. There has been no showing that plaintiff's discovery requests will yield a "gold-mine" of relevant information. Id. In fact, if as alleged in the alternative in the plaintiff's Complaint, the Policy is part of an ERISA plan, this discovery will not be relevant to this case at

all. And, where the plaintiff is in a position to determine how expansive the search should be, the plaintiff should bear the burden of its cost. Id. at 433.

Given these factors, if this Court determines that the plaintiff is entitled to any of the discovery requested in this Motion, the cost of producing the discovery should be borne by the plaintiff.

CONCLUSION

For each of the foregoing reasons, the plaintiff's Motion to Compel should be denied.

UNUMPROVIDENT CORPORATION
AND
PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY

By their attorney,

_____
Joan O. Vorster, Esq.
BBO # CT20230
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:   (508) 791-8502

Dated: 3-10-04

CERTIFICATE OF SERVICE

I, Joan O. Vorster, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to Augustus R. Southworth, III, Domenico Zaino, Jr., Carmody & Torrance, LLP, 50 Leavenworth Street, P.O. Box 1110, Waterbury, CT 06721-1110, and Samuel B. Mayer, Esq., 46 Woodbury Avenue, Stamford, CT 06907.

_____
Joan O. Vorster, Esq.

Dated: 3-10-04