UNITED STATES DISTRICT COURT, DISTRICT OF CONNECTICUT

| | |
|---|---|
| WALTER SCOTT PETERSON<br>Plaintiff, | : CIVIL ACTION NO.<br>: 302 CV 01844 CFD |
| VS. | : <br>: MARCH 30, 2004 |
| UNUMPROVIDENT CORPORATION,<br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br>HILB, ROGAL AND HAMILTON COMPANY,<br>Defendants | :<br>:<br>:<br>:<br>: |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION

**I.   BACKGROUND**

This case arises from the defendants, Provident Life & Accident Insurance Company (hereinafter, "Provident") and UnumProvident Corporation (hereinafter, "UnumProvident"), denial of long-term disability benefits to the plaintiff Walter Scott Peterson, M.D. (hereinafter, "Dr. Peterson"), under a policy issued to Dr. Peterson by Provident. Prior to purchasing this policy in 1987, representatives of Provident and predecessors of the defendant, Hilb, Rogal and Hamilton Company (hereinafter, "HRH"), represented to Dr. Peterson that he would be insured under the policy as an "Ophthalmic Surgeon Specializing in Cataract and Implant Surgery" and would be entitled to benefits if he ever became disabled from working in this specific occupation even if he could perform other work. See Exhibits 1, 2.

These same or very similar representations were also made to Dr. Peterson's colleagues who purchased the same or very similar policies. Dr. Peterson and his colleagues were specifically advised that "the number of hours that you spend doing surgery versus the number of hours you spend weekly seeing patients is of absolutely no importance to [Provident] as far as the definition of disability for you as an ophthalmic

{W1203704}   CARMODY & TORRANCE LLP   50 Leavenworth Street
Attorneys at Law   Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

surgeon. If you are still able to see patients but cannot perform the surgery you are considered totally disabled by the Provident and will receive your full disability income benefit." See <u>Exhibit 2</u>. In reliance upon these and other representations, Dr. Peterson purchased the policy and for 17 years has continued to be solely responsible for payment of the annual premium payment of approximately $5,725. Dr. Peterson's employer never contributed toward payment of the premiums.

On July 11, 2000, Dr. Peterson suffered a heart attack and was admitted to Waterbury Hospital. Dr. Peterson was treated by James F. Flint, M.D. and Albert J. Solnit, M.D. and was also evaluated by Lawrence S. Cohen, M.D. Doctors Flint, Cohen and Solnit have all unequivocally stated that as a result of his heart attack and its sequela Dr. Peterson is totally disabled from his former occupation as an ophthalmic surgeon specializing in cataract and implant surgery and have so informed UnumProvident. Dr. Flint opined that "it would be extremely detrimental to [Dr. Peterson's] health for him to continue performing cataract surgery." Dr. Cohen stated, "it is my unequivocal opinion that Dr. Walter Scott Peterson is disabled in his ability to perform cataract and implant surgery." Dr. Solnit stated that the decision to discontinue performing surgery was "sensible" and "based on a disability that is significant and continuing." See <u>Exhibit 3</u>. Dr. Peterson, in reliance upon his doctors' advice, has discontinued performing cataract and implant surgery.

On or about October 25, 2000, Dr. Peterson completed and mailed a claim for disability benefits to UnumProvident, indicating that he had suffered a heart attack on July 11, 2000 and that his occupation was "an ophthalmic surgeon specializing in cataract and implant surgery." Dr. Peterson further noted that he was not performing any cataract or intraocular lens implant surgery or pre- or immediate post-operative care of cataract

patients. Although the number of hours Dr. Peterson spent performing surgery was relatively small compared to the total number of hours he worked, nearly all of Dr. Peterson's practice related to the surgeries he performed.

Approximately five months after Dr. Peterson submitted his claim for benefits, UnumProvident and Provident informed him that his claim was denied. In their initial denial, UnumProvident did not take into consideration that Dr. Peterson had been specifically insured as an ophthalmic surgeon specializing in cataract and implant surgery. Dr. Peterson provided UnumProvident information confirming that Dr. Peterson had been insured in that capacity and also provided UnumProvident the unequivocal written opinions of Drs. Cohen and Flint. This additional information did not change UnumProvident's decision. Without ever requesting that Dr. Peterson submit to an independent medical evaluation and without interviewing Drs. Flint, Cohen or Solnit, UnumProvident continued to deny Dr. Peterson's claim for benefits, stating that there was "[n]o clear rationale for the recommendations made by the various physicians." UnumProvident informed Dr. Peterson that his claim for benefits would be submitted to the Appeals Unit for further claims handling.

Approximately 10 months after Dr. Peterson appealed UnumProvident's denial of his Claim and *nearly two years* after Dr. Peterson had submitted his initial claim for benefits, he still had not received any notice from UnumProvident regarding whether his appeal had been upheld or denied. As a result, Dr. Peterson's attorney sent a letter to UnumProvident dated March 1, 2002 inquiring as to the status of the appeal. UnumProvident responded by letter dated March 11, 2002, informing Dr. Peterson that his appeal was denied. UnumProvident principally relied upon the opinions of Dr. Michael R. Geer and Dr. Jeffrey Johnson in making their decision. Dr. Geer had been an employee of

UnumProvident through 1998 and has continued to receive substantial payment from UnumProvident as an independent contractor. Dr. Johnson was an employee of UnumProvident at the time Dr. Peterson submitted his claim for benefits.

Dr. Peterson commenced this action on or about October 22, 2001, asserting claims against Provident and UnumProvident sounding in breach of contract, breach of the covenant of good faith and fair dealing and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b et seq. Dr. Peterson pled, in the alternative, two counts against Provident and UnumProvident alleging violation of the Employee Retirement Income Security Act (ERISA). Dr. Peterson also asserted a claim against the defendant Hilb, Rogal and Hamilton Company (hereinafter, "HRH") for negligent misrepresentation.

On April 30, 2003, Dr. Peterson served the Provident with Interrogatories and Requests for Production. On June 17, 2003, Provident filed answers and objections to Dr. Peterson's Interrogatories and Request for Production. Dr. Peterson filed a Motion to Compel dated February 16, 2004, which Provident opposed on or about March 10, 2004. This Court denied Dr. Peterson's Motion to Compel without prejudice on March 15, 2004, which Dr. Peterson received on March 18, 2004. Dr. Peterson hereby files this Motion for Reconsideration.

## II. LAW

"[T]he function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or fact...." Hock v. Thipedeau, 245 F. Supp. 2d 451, 453 (D. Conn. 2003); Philbrick v. Univ. of Conn., 51 F. Supp. 2d 164, 165 (D. Conn. 1999). The moving party must be able to "point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to

alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

### III.    ARGUMENT

Dr. Peterson respectfully requests that this Court reconsider its decision denying his Motion to Compel for the following reasons:

1.      The Court's denial of Dr. Peterson Motion to Compel is inconsistent with Judge Droney's January 22, 2003 ruling regarding the scope of discovery that Dr. Peterson is permitted to pursue in this case. Specifically, after the parties conducted their Rule 26(f) parties planning conference, Provident requested that the Court enter an order for phased discovery whereby the first phase of discovery would be limited to whether the long-term disability policy at issue is an ERISA plan and, if necessary, the second phase would include discovery with regard to non-ERISA claims. See Report of Parties' Planning Conference attached hereto as Exhibit 4. Dr. Peterson objected to Provident's request for phased discovery, arguing that he should not be required to conduct piecemeal discovery and that Provident's proposed discovery schedule would be more costly and time consuming. Judge Droney rejected Provident's argument, which is the same argument Provident has asserted in its Opposition to Plaintiff's Motion to Compel, and agreed that Dr. Peterson is entitled to discovery on all the claims that he has alleged. Exhibit 5.

2.      Dr. Peterson should not be limited in his discovery simply because he alleged, in the alternative, an ERISA count and because Provident *may* at some future date file a motion for summary judgment arguing that the plan at issue is an ERISA plan and, therefore, Dr. Peterson's non-ERISA claims are pre-empted. Dr. Peterson filed an ERISA count in recognition of Provident's well-known practice of claiming ERISA preemption

whenever possible. See <u>Exhibit 6</u>. Indeed, Provident has indicated that it intends to make such an argument in this case despite the fact that there is no evidence to support such a claim. The facts demonstrate that: (a) the policy was issued to Dr. Peterson; (b) Dr. Peterson paid for the premiums on his own without any contribution from his employer; (c) Dr. Peterson negotiated the terms of his policy; and (d) the policy does not indicate that it is an ERISA plan. OptiCare did not establish the plan, control any day-to day operation of the plan, or exercise any discretion over the plan.

    3.    If this Court determines that the plan is not an ERISA plan, Dr. Peterson will need additional time to obtain the discovery now being precluded as a result of the Court's denial of his Motion to Compel. Dr. Peterson may also be forced to depose witnesses twice, which would be onerous, burdensome and costly. See <u>Exhibit 4</u>.

    4.    A plaintiff in Federal Court is not required to plead evidence to properly state a claim. Fed. R. Civ. Proc. 8(a). In <u>Martinez v. Robinson</u>, 2002 WL 424680 (S.D.N.Y. 2002) (<u>Exhibit 7</u>) the court stated that "plaintiffs are not required to prove a prima facie case in order to be entitled to discovery." <u>Id.</u> at *1., citing <u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992, 995 (2002). The court concluded that "[t]his structure cannot be circumvented by imposing a requirement that, before obtaining discovery, a plaintiff not only plead specific facts but also produce supporting evidence. Nor are objections as to relevance or overbreadth a basis for precluding discovery altogether. As long as the plaintiffs' supervisory liability allegations state a claim--and the defendants have not moved to dismiss them-- then the plaintiffs are entitled to seek relevant information by means of properly tailored discovery requests." <u>Id.</u> at *1, 1. Dr. Peterson has properly placed Provident on notice of his claim of bad faith claim under CUTPA and, therefore, is clearly entitled to discovery on this claim. Dr. Peterson has alleged,

among others, facts demonstrating that there was an unreasonable delay in Provident's handling of his claim for disability benefits; that Provident's decision to deny Dr. Peterson's claim for benefits was unreasonable given the unequivocal opinions of his doctors; and that the basis for Provident's denial of Dr. Peterson's claim for benefits directly contradicts representations that were made by Provident when Dr. Peterson purchased his long-term disability policy. See <u>Exhibit 2</u>. Provident's assertion that Dr. Peterson has not disclosed facts evidencing bad faith is untrue. In addition, Provident's argument that Dr. Peterson must disclose all of its evidence in order to obtain discovery is ludicrous in that it would render the discovery process meaningless. The purpose of discovery is to determine if there exists additional information that would support or refute the claims being alleged by the plaintiff. If Provident has nothing to hide, it should produce the requested information.

5. Provident asserts that it would be unduly burdensome to produce the requested information. It is ironic that Provident has made such a claim, yet argues that there is no evidence that it acted in bad faith. The discovery requested by Dr. Peterson principally seeks written statements, made under oath, made by *representatives of Provident* that Provident: (a) pressured its employees and/or doctors to deny or terminate claims for disability benefits; (b) set targets, goals or projections regarding the rate or number of denial of claims for disability benefits; and/or (c) provides financial incentives to any person to deny or terminate claims for benefits. This request for information was limited to the relevant period when Provident reviewed Dr. Peterson's claim for benefits. By claiming that complying with these narrowly tailored requests would be unduly burdensome, Provident is admitting that there is an overwhelming abundance of documentation that pertain to these bad-faith issues. Indeed, Dr. Fergal McSharry,

UnumProvident's former medical director during the relevant time-period, has brought a lawsuit claiming that he and other doctors were pressured to deny claims for long-term disability benefits. Dr. McSharry, who worked at UnumProvident's headquarters in Chattanooga, Tennessee, has that it was UnumProvident's primary policy and practice to deny disability claims, medical advisors were used only to provide language and conclusions supporting denial of claims, and UnumProvident engaged in other, unethical practices which precluded meaningful review of disability claims by its medical personnel. See <u>Exhibit 8</u>. Other former employees of Provident who were involved in Provident's review of claims for disability benefits have also stated that Provident engaged in the above-referenced acts. In addition, a December 23, 2003 article published in *Business Week* reports that 45 states are jointly investigating UnumProvident's practices and at least one state, Georgia, has already fined UnumProvident one million dollars for its claims handling practices. See <u>Exhibits 9, 10</u>. Dr. Peterson is certainly entitled to discovery on these issues. Thus, in Request for Production number 18, Dr. Peterson specifically identified by name the former employees or representatives of Provident that he believes complained about the Company's claims handling practices and requested the statements that they had made under oath. Dr. Peterson also requested in Requests for Production Number 17, 19 and 20 copies any complaints filed, or findings made, by any state or federal agency concerning the defendants' claims handling process. Provident did not provide a single document in response to these requests under the guise that they are unduly burdensome, despite their obvious specificity and limited scope. The real reason Provident has steadfastly refused to provide the requested information is because it will have a damning effect on its attempt to discredit the legitimacy of Dr. Peterson's claims.

6.  Provident has exaggerated the amount of time that it would take to comply with Dr. Peterson's discovery requests. Provident alleges that "it would cost approximately Three Hundred Fourteen Thousand Nine Hundred and 00/100 ($314,900.00) Dollars just to copy the 3,149 litigation files in which UnumProvident and/or Provident Life & Accident Insurance Company was named a party and One Hundred Seventy-Eight Thousand Two Hundred and 00/100 ($178,200.00) Dollars to copy the 1,782 litigation files in which Provident Life & Accident Insurance company was a named party." Brokish Aff. ¶ 9. Dr. Peterson has <u>not</u> requested that Provident produce all of its litigation files for the past five years. The discovery requested by Dr. Peterson, as noted above, is narrowly tailored. Provident has not provided responsive documents even in cases where it knows such information exists and is readily available. In <u>Omega Engineering v. Omega, S.A.</u>, 2001 WL 173765 (D. Conn. 2001) (<u>Exhibit 11</u>), Judge Covello, citing the Federal Rules Advisory Committee, noted that a party should not refuse to provide any discovery based on hypertechnical readings of discovery requests, but rather should provide the requested information to the extent they are not objectionable. The court stated as follows:

> ...rather than answer these interrogatories insofar as they relate to sets of interrogatories and document requests that had already been propounded on OSA, OSA inappropriately chose not to respond at all. See <u>Fed.R.Civ.P. 33(b)(2)</u> (noting that objecting party "*shall* answer *to the extent the interrogatory is not objectionable.*"). Further, the court notes that the Federal Rules Advisory Committee has expressly disapproved of employing such gamesmanship in discovery requests: 'Interrogatories ... should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under [<u>Rule 37(a)</u>].'

<u>Id</u>. at *4, citing 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, <u>Fed. Prac. and Procedure § 2177</u>, at 317 (2d ed.1994), quoting Advisory Committee Notes.[1]

---

[1] In <u>Russel v. Unum Life Insurance Company of America</u>, 1 CA-CV-02-0277 (Ariz. 22003) (<u>Exhibit 12</u>), the court affirmed monetary sanctions against Unum for exaggerating and misleading the court regarding its ability to respond to certain discovery requests on the grounds that the information requested by the plaintiff was "oppressive and unduly

7.  Provident makes numerous references in its Opposition to Plaintiff's Motion to Compel that Dr. Peterson is seeking information concerning Provident from "across the country". Provident does so in an apparent attempt to claim that the Dr. Peterson's discovery requests are overly broad. See Pl. Opp. Mot. to Compel, p. 3, 4, 11, 12, 14, 15, 16. What Provident fails to mention, however, is that, upon information and belief, its claims handling department is centrally located in specified regions. Further, Dr. McSharry and, upon information and belief, other former employees who have criticized UnumProvident's claims handling process worked at the Company's Chattanooga, Tennessee office, which is the same office that reviewed Dr. Peterson's claim for benefits. Thus, the fact that these individuals make decisions on claims for disability benefits in multiple states across the country in no way demonstrates that Dr. Peterson's discovery requests are unduly burdensome or irrelevant. It is misleading for Provident to suggest otherwise.

## IV. CONCLUSION

Based on the foregoing, the Plaintiff, Walter Scott Peterson, M.D., respectfully requests that this Court grant his Motion for Reconsideration and require Provident to comply with his discovery requests.

Respectfully submitted, Walter Scott Peterson, M.D.

By: _____
Domenico Zaino, Jr. (Bar No. ct20082)
Carmody & Torrance LLP
50 Leavenworth Street, P.O. Box 1110
Waterbury, CT 06721-1110
Phone: 203-573-1200, Fax: 203-575-2600

---

burdensome." Provident's refusal to provide responsive information to the disputed discovery requests on the grounds that doing so would be unduly burdensome and oppressive is also exaggerated.