UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WALTER SCOTT PETERSON<br>    Plaintiff, | :  CIVIL ACTION NO.<br>:  302 CV 01844 CFD<br>: |
| VS. | :  MAY 10, 2004<br>: |
| UNUMPROVIDENT CORPORATION,<br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br>HILB, ROGAL AND HAMILTON COMPANY,<br>    Defendants | :<br>:<br>:<br>:<br>: |

### OBJECTION TO RULING BY MAGISTRATE JUDGE DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

**I.  INTRODUCTION**

Pursuant to Fed.R.Civ.P. Rule 72(a) and Local Rule 72.2, the plaintiff, Walter Scott Peterson, M.D. (hereinafter "Dr. Peterson"), respectfully objects to the discovery ruling issued by Magistrate Judge Smith, dated April 26, 2004 (hereinafter "Ruling"), which denied plaintiff's Motion for Reconsideration. At issue is the plaintiff's right to engage in discovery concerning the defendant's bad faith in denying plaintiff's claim for long-term disability benefits. The Ruling is clearly erroneous for the following reasons:

1.  The Ruling is inconsistent with the Court's January 22, 2003 ruling, rejecting the defendant's request for bifurcation discovery in this case;

**ORAL ARGUMENT REQUESTED**

CARMODY & TORRANCE LLP
Attorneys at Law
{W1400352}

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

2.  In light of the liberal and broad discovery standards, Dr. Peterson should not be barred from conducting relevant discovery on the premise that the defendants may challenge, at some unspecified future date, Dr. Peterson's CUTPA and CUIPA claims based on ERISA preemption;

3.  The Magistrate Judge's denial of Plaintiff's Motion for Reconsideration is based on his erroneous prediction that the long-term disability policy at issue is an ERISA Plan is clearly erroneous and contrary to law; and

4.  Even assuming *arguendo,* that the long-term disability policy is an ERISA plan, the plaintiff is nevertheless entitled to discovery concerning allegations that the defendants acted in bad faith.

For these reasons and for reasons more fully set forth below, the Magistrate Judge's Ruling is clearly erroneous and contrary to law.

## II. STATEMENT OF THE NATURE OF THE CASE

This case arises from the defendants, Provident Life & Accident Insurance Company (hereinafter, "Provident") and UnumProvident Corporation (hereinafter, "UnumProvident"), denial of long-term disability benefits to Dr. Peterson under a policy issued to him by Provident. Prior to purchasing this policy in 1987, representatives of Provident and predecessors of the defendant, Hilb, Rogal and Hamilton Company (hereinafter, "HRH), represented to Dr. Peterson that he would be insured under the policy as an "Ophthalmic Surgeon Specializing in Cataract and

{W1300352}
CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
2

Implant Surgery" and would be entitled to benefits if he ever became disabled from working in this specific occupation even if he could perform other work. See Exhibits 1, 2.

These same or very similar representations were also made to Dr. Peterson's colleagues who purchased the same or very similar policies. Dr. Peterson and his colleagues were specifically advised that "the number of hours that you spend doing surgery versus the number of hours you spend weekly seeing patients is of absolutely no importance to [Provident] as far as the definition of disability for you as an ophthalmic surgeon. If you are still able to see patients but cannot perform the surgery you are considered totally disabled by the Provident and will receive your full disability income benefit." See Exhibit 2. In reliance upon these and other representations, Dr. Peterson purchased the policy and for 17 years has continued to be solely responsible for payment of the annual premium payment of approximately $5,725. Dr. Peterson's employer never contributed toward payment of the premiums.

On July 11, 2000, Dr. Peterson suffered a heart attack and was admitted to Waterbury Hospital. Dr. Peterson was treated by James F. Flint, M.D. and Albert J. Solnit, M.D. and was also evaluated by Lawrence S. Cohen, M.D. Doctors Flint, Cohen and Solnit have all unequivocally stated that as a result of his heart attack and its sequela Dr. Peterson is totally disabled from his former occupation as an ophthalmic surgeon specializing in cataract and implant surgery and have so informed UnumProvident. Dr. Flint opined that "it would be extremely detrimental to [Dr.

{W1300352}
CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
3

Peterson's] health for him to continue performing cataract surgery." Dr. Cohen stated, "it is my unequivocal opinion that Dr. Walter Scott Peterson is disabled in his ability to perform cataract and implant surgery." Dr. Solnit stated that the decision to discontinue performing surgery was "based on a disability that is significant and continuing." See Exhibit 3. Dr. Peterson, in reliance upon his doctors' advice, has discontinued performing cataract and implant surgery.

On or about October 25, 2000, Dr. Peterson completed and mailed a claim for disability benefits to UnumProvident, indicating that he had suffered a heart attack on July 11, 2000 and that his occupation was "an ophthalmic surgeon specializing in cataract and implant surgery." Dr. Peterson further noted that he was not performing any cataract or intraocular lens implant surgery or pre- or immediate post-operative care of cataract patients. Although the number of hours Dr. Peterson spent performing surgery was relatively small compared to the total number of hours he worked, nearly all of Dr. Peterson's practice related to the surgeries he performed.

Approximately five months after Dr. Peterson submitted his claim for benefits, UnumProvident and Provident informed him that his claim was denied. In their initial denial, UnumProvident did not take into consideration that Dr. Peterson had been specifically insured as an ophthalmic surgeon specializing in cataract and implant surgery. Dr. Peterson provided UnumProvident information confirming that Dr. Peterson had been insured in that capacity and also provided UnumProvident the

{W1300352}
CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
4

unequivocal written opinions of Drs. Cohen and Flint. This additional information did not change UnumProvident's decision.

Approximately 10 months after Dr. Peterson appealed UnumProvident's denial of his Claim and *nearly two years* after Dr. Peterson had submitted his initial claim for benefits, he still had not received any notice from UnumProvident regarding whether his appeal had been upheld or denied. As a result, Dr. Peterson's attorney sent a letter to UnumProvident dated March 1, 2002 inquiring as to the status of the appeal. UnumProvident responded by letter dated March 11, 2002, informing Dr. Peterson that his appeal was denied. UnumProvident principally relied upon the opinions of Dr. Michael R. Geer and Dr. Jeffrey Johnson in making their decision. Dr. Geer had been an employee of UnumProvident through 1998 and has continued to receive substantial payment from UnumProvident as an independent contractor. Dr. Johnson was an employee of UnumProvident at the time Dr. Peterson submitted his claim for benefits.

Dr. Peterson commenced this action on or about October 22, 2002, asserting claims against Provident and UnumProvident sounding in breach of contract, breach of the covenant of good faith and fair dealing and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b et seq. Dr. Peterson pled, in the alternative, two counts against Provident and UnumProvident alleging violation of the Employee Retirement Income Security Act (ERISA). Dr. Peterson also asserted a claim against the defendant HRH for negligent misrepresentation.

{W1300352}
CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
5

On April 30, 2003, Dr. Peterson served the Provident with Interrogatories and Requests for Production. On June 17, 2003, Provident filed answers and objections to Dr. Peterson's Interrogatories and Request for Production. The Defendants' objected to Interrogatory 8 and Requests for Production Number 15 through 20 which sought information concerning the Defendants' claims process and its handling of disability claims. Dr. Peterson filed a Motion to Compel dated February 16, 2004, which Provident opposed on or about March 10, 2004. The Magistrate Judge denied Dr. Peterson's Motion to Compel on March 15, 2004. See Exhibit 4. In its ruling, the Court stated that "whether the requested discovery is relevant to the claim of plaintiff within the meaning of Fed. R. Civ. P. 26(b)(1) hinges on whether plaintiff's state law contract claims and those under CUTPA survive the ERISA preemption arguments of defendants...." Although the Court denied Dr. Peterson's Motion, it did so without prejudice to renewal after a ruling by Judge Droney on the preemption issue. Thereafter, Dr. Peterson filed a Motion for Reconsideration requesting that the Court reconsider its decision denying Dr. Peterson's Motion to Compel. In denying Dr. Peterson's Motion for Reconsideration the Court stated that its Ruling was not in conflict or inconsistent with "anything Judge Droney has done in this case." See Exhibit 5.

### III. STATEMENT OF LEGAL POSITION:

#### A. Discovery Standard of Review:

In reviewing a Magistrate Judge's ruling in a pre-trial nondispositive matter, a district judge shall "modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to the law." Fed.R.Civ.P. 72(a). See also 28 U.S.C. §636(b)(1)(A)("A judge of the court may reconsider any pretrial matter ... [where] the magistrate order is clearly erroneous or contrary to law.").

#### B. The Magistrate Judge's Ruling is clearly erroneous and contrary to law.

1. The Magistrate Judge's ruling is clearly erroneous because it is inconsistent with and contrary to Judge Droney's prior ruling regarding the proper scope of discovery.

In his Motion for Reconsideration, Dr. Peterson argued that the Magistrate Judge's denial of his Motion to Compel was inconsistent with Judge Droney's January 22, 2003 ruling regarding the scope of discovery that Dr. Peterson is permitted to pursue in this case. Specifically, after the parties conducted their Rule 26(f) parties planning conference, Provident requested that the Court enter an order for phased discovery whereby the first phase of discovery would be limited to whether the long-term disability policy at issue is an ERISA plan and, if necessary, the second phase would include discovery with regard to non-ERISA claims. See Report of Parties' Planning Conference attached hereto as Exhibit 6. Dr. Peterson objected to Provident's request for phased discovery, arguing that he should not be required to

conduct piecemeal discovery and that Provident's proposed discovery schedule would be more costly and time consuming. Judge Droney <u>rejected</u> Provident's argument and agreed that Dr. Peterson is entitled to discovery on <u>all</u> the claims that he has alleged. <u>See</u> <u>Exhibit 7</u>.

Nevertheless, in denying Dr. Peterson's Motion for Reconsideration, the Magistrate Judge concluded that "there is no conflict or inconsistency with anything Judge Droney has done in this case." <u>See</u> <u>Exhibit 5</u>. That conclusion is clearly erroneous because the Magistrate Judge's Order rendered Judge Droney's ruling meaningless by precluding Dr. Peterson from conducting all relevant discovery with respect to his CUTPA and CUIPA claims before summary judgment. Instead, the Magistrate Judge's Order has created phased discovery in this case, even though this Court has already affirmatively rejected Defendant's request for phased discovery. The Magistrate Judge's Ruling has barred Dr. Peterson from conducting discovery that he was otherwise entitled to engage in under Judge Droney's ruling. In view of this Court's decision with respect to the Rule 26(f) Planning Report, the Magistrate Judge's Ruling was clearly erroneous and should be reversed.

> 2. <u>Contrary to the liberal and broad discovery standards, the Magistrate Judge's Ruling prevents Dr. Peterson from conducting relevant discovery at this stage of the proceedings just because the defendants may, at some unspecified future date, challenge Dr. Peterson's CUTPA and CUIPA claims.</u>

"[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, encompass[ing] any matter that bears on, or that reasonably could lead to other matter

that could bear on, any issue that is or may be in the case." Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992) quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed 2d 253 (1978). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party....Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Applying these liberal standards, the relevance of the documents sought by Dr. Peterson is sufficient to put the documents within the reach of properly propounded discovery. Dr. Peterson has asserted a claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b et seq.("CUTPA), based on violations of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a-816 ("CUIPA"). To support his CUTPA and CUIPA claims, Dr. Peterson has specifically alleged, among other allegations, that UnumProvident has "committed unfair claim settlement practices with such frequency as to indicate a general practice in violation of [CUTPA]" and that UnumProvident "misrepresented the benefits, advantages, conditions or terms" of the disability policy at issue. Compl. ¶ 46. Dr. Peterson has also alleged that UnumProvident "has engaged in a pattern and practice of willfully, and in bad faith, denying claims for disability benefits." Compl. ¶ 37. The information Dr. Peterson has requested is clearly relevant to establishing his CUTPA and CUIPA claims.

Dr. Peterson has identified a colorable argument, at least at this stage of the proceedings, for potential relevance of the information he seeks, whether or not at some later stage in the proceedings the CUTPA and CUIPA claims are found to be preempted by the application of ERISA. Indeed, just because Provident <u>may</u> at some future date file a motion for summary judgment arguing that the plan at issue is an ERISA plan and, therefore, Dr. Peterson's non-ERISA claims are pre-empted, it does not follow that the documents at issue are irrelevant to claims that are currently viable. On the contrary, the definition of "relevance" under Rule 26(b)(1) is very broad, and, commensurate with that breadth, the tools of discovery for uncovering relevant evidence cut a wide path. Moreover, it would be a perverse incentive to dilatory discovery practice if, because a party <u>may</u> at some unspecified time file a motion for summary judgment, a party could avoid disclosure of documents that are relevant to the pending, unchallenged counts. Under these circumstances, the Ruling is contrary to the law and clearly erroneous.

> 3. <u>The Magistrate Judge's denial of plaintiff's Motion for Reconsideration based on a prediction that the long-term disability policy at issue is an ERISA plan is clearly erroneous and contrary to law.</u>

The Magistrate Judge's prediction that this Court will find that the long-term disability plan at issue is an ERISA plan is clearly erroneous and contrary to law. First, the Magistrate Judge engaged in such a prediction without being presented with any evidence (affidavit, documentary or otherwise), concerning the issue of whether

the disability plan at issue is an ERISA plan. Second, and most significantly, the plaintiff is confident that it will demonstrate that the long-term disability policy at issue is not an ERISA plan.

An employee welfare benefit plan is a plan, fund or program "established or maintained by an employer" to provide benefits in the event of illness, disability or certain other conditions. 29 U.S.C. § 1002(1). The determination of whether the long-term disability plan at issue is an ERISA plan is a question of fact to be determined in light of all the surrounding circumstances. See Grimo v. Blue Cross/Blue Shield of Vermont, 34 F.3d 148 (2d Cir. 1994) (vacating summary judgment for the insurer on the grounds that the factual record was insufficient to determine whether the insurance plan constituted an ERISA plan); Kissner v. Inter-Continental Hotels Corp., 1998 WL 337067 at *2 (S.D.N.Y. 1998) ("[w]hether an agreement constitutes an ERISA pension plan is a question of fact which must be answered in light of all surrounding circumstances from the perspective of a reasonable person") citing Grimo, supra; Eckardt v. Wiebel Tool Co. Inc., 965 F. Supp. 357, 362 (E.D.N.Y. 1997) (same).

To aid in the determination of what constitutes an ERISA plan, the Secretary of Labor has issued an interpretive regulation that creates for certain employer practices a "safe harbor" from ERISA coverage. In pertinent part, the regulation provides:

> [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees . . . , under which
>
> (1) No contributions are made by an employer . . . ;
>
> (2) Participation [in] the program is completely voluntary for employees . . . ;
>
> (3) The sole functions of the employer . . . with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees . . . , to collect premiums through payroll deductions . . . and to remit them to the insurer; and
>
> (4) The employer . . . receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions. . . .

29 C.F.R. § 2510.3-1(j).

In this case, the evidence will demonstrate that the long-term disability plan at issue falls within these safe harbor regulations and, therefore, is not an ERISA plan. See <u>Devlin v. Transportation Communications International Union</u>, 175 F.3d 121 (2d Cir. 1999) (holding that a death benefit fund was not an ERISA plan because it came within the DOL's safe harbor regulations).

> 4. <u>Assuming *arguendo*, that the long-term disability policy at is an ERISA plan, the plaintiff is nevertheless entitled to discovery concerning allegations that the defendants acted in bad faith.</u>

The discovery requests at issue seek information concerning whether the defendants acted in bad faith in their decision to deny Dr. Peterson's claim for

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
12

benefits. The plaintiff is entitled to this discovery even if the long-term disability policy at issue is an ERISA plan. Thus, the decision to prohibit Dr. Peterson from obtaining this discovery because the long-term disability policy at issue *may* constitute an ERISA plan is clearly erroneous and contrary to law.

The Second Circuit Court of Appeals has established a five-factor test in determining whether to award attorneys fees in an ERISA action. See Lauder v. First Unum Life Insurance Company, 284 F.3d 375 (2d Cir. 2002) citing Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869 (2d Cir. 1987). One of these five factors involves the "degree of the offending party's culpability or bad faith." Id. at 383 citing Chambless, 815 F.2d at 871. Dr. Peterson, therefore, is not automatically prohibited from obtaining discovery concerning the bad faith actions of the defendants simply because this court may find that the long-term disability policy at issue is an ERISA plan.

### IV.   CONCLUSION

For the foregoing reasons, Dr. Peterson respectfully submits that the Magistrate Judge's Ruling was clearly erroneous and contrary to the law and therefore should not be allowed to stand.

Respectfully submitted,
Walter Scott Peterson, M.D.

By: _____
Augustus R. Southworth III
Federal Bar No. ct04166
Domenico Zaino, Jr.
Federal Bar No. ct20082
Carmody & Torrance, LLP
50 Leavenworth Street
Waterbury, CT 06702
Phone: 203-573-1200
Fax: 203-575-2600
Email: dzaino@carmodylaw.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing Objection to Magistrate Judge's Ruling has been mailed, postage prepaid, on May 10, 2004, to:

Joan O. Vorster, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA  01608-1477

Samuel B. Mayer, Esq.
Duane Morris
46 Woodbury Ave.
Stamford, CT  06907

_____
Domenico Zaino, Jr.

CARMODY & TORRANCE LLP
Attorneys at Law
Juris No. 08512
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

{W1300352}                                      15