**EXHIBIT B**



June 10, 2004

Carmody & Torrance, LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT   06721-1110
ATTN: Domenico Zaino, Jr.

Re: Walter Scott Peterson, M.D.
     Claim #: 52-00751908-003 and 52-00817087-003

Dear Mr. Zaino:

This letter is written in reference to your client's above-referenced disability claims with our company. Please allow this letter to serve as both an update on these claims as well as a response to your recent May 17, 2004 correspondence.

In an effort to set forth the rationale behind Provident Life and Accident Insurance Company's claims decision, Provident draws your attention to the first claim filed by Dr. Peterson. As you will recall, Dr. Peterson filed a claim in 2000 for s/p Myocardial Infarction and s/p PTCA with stent deployment. Dr. Peterson claimed to be disabled as of July 11, 2000.

After the receipt of the appropriate medical records (which included other relevant information) and our review of the same, Provident advised Dr. Peterson on March 6, 2001, through written correspondence, that his claim was not payable because he did not satisfy the definition of disability (total or residual) as those terms are defined in his contracts.

Subsequently, in November of 2002, Dr. Peterson filed this claim, through your office, for macular degeneration, retinal tears and macular edema. Dr. Peterson's Attending Physician, Dr. Jason Horowitz indicated that his restrictions were "n/a" and his limitations were that of "microsurgery" and that they became effective on July 22, 2002. However, Dr. Horowitz stated that he expected fundamental changes in Dr. Peterson's condition within the next "1-2 months".

As is required to properly and fairly adjudicate a disability claim, Provident must have a very good understanding of the claimant's occupational duties at the time of disability, in this case, July 22, 2002. As part of this review, Provident routinely requests this information from the insured. However, since you represented Dr. Peterson, your law office provided Provident with a detailed summary completed by Dr. Peterson. Since this information is very relevant, I will quote directly from Dr. Peterson:

"...I suffered a heart attack on July 11, 2000 and was informed by my doctors that I should no longer perform any cataract or implant surgeries...Since July 11, 2000, I have not performed any cataract or implant surgeries or any pre-operative care of cataract patients. I have performed routine post-operative care of cataract patients only on rare occasions. I gradually resumed a general full-time routine office practice and currently spend a majority of my time evaluating and treating patients with general ophthalmologic problems, including glaucoma, retinal conditions, ocular emergencies and infections, cataracts not yet scheduled for surgery, and other general ophthalmology problems. Prior to July 11, 2000, these job duties constituted a much smaller part of my practice".

In light of this information from Dr. Peterson, it is important to note how Dr. Peterson's policies define the term *occupation*. "Your occupation" means "the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled." Given this definition of *occupation*, in order to determine whether Dr. Peterson is disabled, Provident must consider the occupation in which Dr. Peterson was regularly engaged as of the time he became disabled on July 22, 2002.

To evaluate Dr. Peterson's claim, Provident ordered all of Dr. Peterson's applicable medical/treatment records from Dr. Horowitz. After receipt of these records and consultation with the appropriate clinical resources, Provident determined that it would exercise its right to have Dr. Peterson undergo an independent medical evaluation in order to fully assess and document any restrictions and limitations he may have.

Dr. Jay Fleischman, Clinical Professor at the Albert Einstein College of Medicine, performed this evaluation on March 18, 2004. Through his review of the entire medical record and his physical examination, Dr. Fleischman determined (in part) "...Careful magnified examination (with a contact lens) revealed a normal appearing macula. There were no inner or outer retinal changes and the fine capillary vessels did not reveal any distortions or wrinkling. No residual membranes were evident. It is my opinion that Dr. Peterson's subjective complaints are consistent with his ophthalmic history. Furthermore, at this current vision level, accompanied by right vision distortion, I believe that it would be both difficult and imprudent for him, at this time, to perform cataract microsurgery. He should be able to perform adequately as an ophthalmologist with his non-surgical practice."

In an effort to confirm these findings, Dr. Fleischman's evaluation, along with Dr. Peterson's entire claim file, was referred to a Board-Certified Ophthalmologist Consultant for review and comment (dated May 9, 2004). He determined (in part) "...I do agree with Dr. Fleischman and with some restrictions also. I agree it would be difficult to perform any microsurgical procedure. He also should be able to perform adequately in the office".

Total and Residual Disability are defined in Dr. Peterson's policies are as follows:

*Total Disability or totally disabled means that due to injuries or sickness:*

1) *You are not able to perform the substantial and material duties of your occupation; and*
2) *You are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.*

*Residual Disability or residually disabled, during the elimination period, means that due to injuries or sickness:*

1) *you are not able to do one or more of your substantial and material daily business or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;*
2) *you have a loss of monthly income in your occupation of at least 20%; and*
3) *you are receiving care by a physician, which is appropriate for the condition causing the disability.*

1) *After the elimination period has been satisfied, you are no longer required to have a loss of duties or time. Residual Disability or residually disabled then means that due to injuries or sickness: you have a loss of monthly income in your occupation of at least 20%; and*
2) *you are receiving care by a physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you."*

Through its review of this claim, Provident has determined that there are no restrictions and limitations that would prohibit Dr. Peterson from performing the material and substantial duties of the occupation in which he was regularly engaged at the time of disability – July 22, 2002. This is supported not only by our Board-Certified Medical Consultant, but also by Dr. Fleischman's independent medical evaluation. Per the definitions stated above, there must be support for an ongoing impairment to be eligible for disability benefits. Without this support, Provident is unable to provide Dr. Peterson with any further benefits under his policies.

With respect to Dr. Peterson's occupation, at the time he claims to have become disabled in July 2002 Dr. Peterson was working in a "routine office practice" treating general opthalmic problems. He had not performed microsurgery since July 11, 2000. As of July 22, 2002 Dr. Peterson's occupation was that of a general Ophthalmologist. The material and substantial duties of his occupation as of July 22, 2002 did not include ophthalmic microsurgery. Given the results of the Independent Medical Examination, and the opinion of Provident's medical consultant, Dr. Peterson is able to perform the material and substantial duties of his occupation, as that term is defined by his policies. He does not meet the definition of either total or residual disability in his Provident policies and no benefits are payable at this time.

In making our decision, Provident reserves all rights and defenses afforded by the policy. This determination on your claim has been based on the information presently available in your claim file. If you believe this determination was made in error and you have additional information of which we are not aware of, please submit this information in writing so Provident may consider it.

This determination is based on the information currently in our file. If you are not satisfied or do not agree with the reason for the denial of your claim, an appeal can be made to:

UnumProvident<br>
Quality Review – 1-North<br>
P.O. Box 180136<br>
Chattanooga, TN 37402

The appeal must be in writing and should contain the following information:

- The reason for the appeal and/or disagreement
- Your name, policy number and Social Security Number; and
- Medical evidence or documentation

Evidence of documentation may include but is not limited to such material as:

- Additional treatment records from physicians,
- Actual test results (e.g. EMG, stress tests, electrophysiologic studies), or
- Functional Capacity Evaluation results

The appeal must be made within 180 days of the date this letter is received.

You may request a review of this denial by writing to us. The written request for a review must be sent within 180 days of the receipt of this letter and state the reason why it is felt the claim should not have been denied. Include any documentation (e.g. Medical Data) that is felt to support the claim. Under normal circumstances, you will be notified of the final decision within 60 days of the date the request for review is received. If there are special circumstances requiring delay, you will be notified of the final decision no later than 120 days after the request is received.

Nothing in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. In addition, it should be noted that Provident Life and Accident Insurance Company reserves the right to assert any additional reasons or defenses why you may not qualify for benefits at a later date if new information supports such a position. Should you have any information that would prove contrary to our findings, please submit it to us. We will be pleased to review any information you may wish to submit.

If you have any questions, please do not hesitate to contact me at 1-800-451-8464, ext. 41648

Sincerely,

Ramine Poureshmenantalemy
The Benefits Center
Provident Life and Accident Insurance Company and affiliates