UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| WALTER SCOTT PETERSON,<br>    Plaintiff<br><br>V.<br><br>UNUMPROVIDENT CORPORATION,<br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY, and<br>HILB, ROGAL AND HAMILTON<br>COMPANY,<br>    Defendants | CIVIL ACTION NO. 302CV01844CFD |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO FILE AMENDED COMPLAINT**

Nature and Status of Proceedings

In this case plaintiff, Walter Scott Peterson, M.D., claims that he is entitled to benefits pursuant to a disability income policy of insurance ("the Policy") issued by the defendant, the Provident Life and Accident Insurance Company ("Provident"). Dr. Peterson claims that he is totally disabled from performing his occupation as an ophthalmic surgeon because the stress associated with performing cataract and implant surgery will aggravate his coronary artery disease. After reviewing his claim Provident determined that Dr. Peterson did not meet the definition of total disability in the Policy.

In October 2002, plaintiff filed this action asserting several state law claims, including breach of contract, breach of good faith and fair dealing, and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") Conn. Gen Stat. § 42-110 et seq. based on violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") Conn. Gen. Stat. §38a-816 et seq.

{H:\PA\Lit\16310\00042\A0725754.DOC}**ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED**

However, recognizing that the benefits under the Policy may have been provided pursuant to an employee welfare benefit plan, in Counts IV and V, plaintiff asserts claims under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1132.

The issue in this case is whether Dr. Peterson, due to injury or sickness, is unable to perform the material and substantial duties of his occupation, and is thus totally disabled as a result of coronary artery disease under the terms of the Policy.

Now, as to defendants Provident and UnumProvident (collectively "the defendants"), plaintiff seeks to amend his complaint to add:[1]

    (a)    a claim for negligent misrepresentation; and

    (b)    a claim for breach of contract based on a second claim for disability benefits.

This motion should be denied because plaintiff's proposed amendments are futile. The defendants oppose the plaintiff's proposed amendment for each of the following reasons, which are fully set forth in this Memorandum of Law:

    1.    Plaintiff cannot maintain a claim for negligent misrepresentation as a matter of law. According to the plaintiff certain misrepresentations were made to Dr. Peterson by both Provident and UnumProvident when he purchased his policy in 1986. UnumProvident did not exist in 1986. Plaintiff claims that UnumProvident and Provident had a duty to inform him of the fact that his long-term disability policy was governed by ERISA and that a salary allotment agreement between Provident and his employer would make the policy part of an ERISA plan. However, there was no affirmative duty to disclose this information and the defendants could not have known in 1986 that this policy would be governed by ERISA, or that ERISA some 24 years later would preempt state law claims. In addition, plaintiff cannot base a claim for negligent

---

[1] Plaintiff also seeks to add additional allegations with respect to the defendant, Hilb, Rogal & Hamilton Company ("HRH"). Any objection HRH may have to the proposed amendments will be filed separately.

misrepresentation on statements that were not made to him by either defendant. These allegations are insufficient as a matter of law to establish a claim for negligent misrepresentation. Therefore, it would be futile to allow plaintiff to amend his complaint to add a claim for negligent misrepresentation.

      2.    Plaintiff cannot maintain a cause of action on his second disability claim at this time as a matter of law. Plaintiff seeks to amend his complaint to add allegations about Provident's handling of his second disability claim under this policy where Dr. Peterson claims to be totally disabled from his occupation as a result of his eyesight. Provident has determined that Dr. Peterson under the second claim is not totally disabled. However, plaintiff has yet to appeal this decision. Plaintiff has pled in the alternative that his claims under the Policy are governed by ERISA under Counts IV and V. To the extent that this policy is governed by ERISA, a plaintiff may not institute litigation until he has exhausted his administrative remedies. Accordingly, until a decision on the appeal has been rendered, amendment of the Complaint to add this second claim is premature.

Provident submits this Memorandum and the Affidavit of Susan Roth in Opposition to Plaintiff's Motion to File Amended Complaint. Ms. Roth's affidavit is attached to this Memorandum as Exhibit A.

## Statement of Facts

Plaintiff, Dr. Walter Scott Peterson, is an ophthalmologist in Waterbury, Connecticut, who specialized in cataract and implant surgery. On or about October 13, 1986, Dr. Peterson applied for disability insurance with Provident. Pursuant to the application, his employer, a professional corporation called Eye Associates of Waterbury, later renamed Opticare, Inc., paid

100% of the premiums for this policy. Dr. Peterson is an employee of Opticare, Inc. The Policy became effective on December 1, 1986.

Pursuant to the Policy, "total disability or totally disabled means that due to Injuries or Sickness: (1) you are not able to perform the substantial and material duties of your occupation; and (2) you are receiving care by a Physician which is appropriate for the condition causing the disability." The Policy also provides for residual disability benefits.

In July 2000, Dr. Peterson had a heart attack, for which he was only hospitalized for two days. By the time he had submitted his disability claim to Provident on October 25, 2000, Dr. Peterson had returned to work, seeing patients in the office, but not performing surgery. Before submitting his disability claim, Dr. Peterson performed surgery for 5 hours, one morning a week. He claims that he is totally disabled because he is unable to perform the one morning of surgery a week because the stress that he experiences when he performs surgery will worsen his coronary disease.

After Dr. Peterson submitted his claim, Provident had a medical consultant, a board certified cardiologist, review his medical records. Provident's medical review of Dr. Peterson's claim established that

> "the patient has well documented coronary disease with no current documentation of angina or provocable angina. The medical record does not support that the patient can no longer perform his full-time surgical work. There is no data presented that supports that he falls within a high risk group for a cardiovascular event. There is no data presented that would support that this patient is at high risk for mental stress induced ischemia. It must be noted that mental stress induced ischemia is not common in patients with no exercised induced ischemia. Objective data in the medical record would support that the patient should be able to perform a light occupation."

Based on this evaluation, and all of the information in Dr. Peterson's claim file, Provident denied Dr. Peterson's claim on March 6, 2001 on grounds that he did not meet the definition of

total disability under his policy.  That decision was upheld on appeal in March 2002.  The plaintiff filed his complaint in this action on October 22, 2002.

On November 11, 2002, plaintiff filed a second claim for disability benefits.  On June 10, 2004, Provident denied plaintiff's second claim on the grounds that he was not totally disabled from performing the current material and substantial duties of his occupation.  Plaintiff has not appealed this decision as provided in the Policy.

ARGUMENT

I. **PLAINTIFF'S MOTION TO AMEND SHOULD BE DENIED BECAUSE AMENDMENT IS FUTILE.**

   A. **Standard of Review.**

"While leave to amend a pleading shall be freely granted when justice so requires, Fed. R. Civ. P. 15(a), amendment is not warranted in the case of, among other things, 'futility.'" Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003).  "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Id.; Martin v. Dickson, 2004 U.S. App. LEXIS 10725, 5-6 (2d Cir., 2004).

"When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted.  The adequacy of the proposed amended complaint, however, is to be judged by the same standards as those governing the adequacy of a filed pleading." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

In this case, plaintiff's motion to amend is futile because the amendments plaintiff proposes fail to state a claim upon which relief can be granted.

## II. PLAINTIFF'S PROPOSED CLAIM FOR NEGLIGENT MISREPRESENTATION FAILS TO STATE A CLAIM.

Plaintiff seeks to amend his complaint to add a count for negligent misrepresentation against both Provident and UnumProvident. Plaintiff seeks to assert a negligent misrepresentation claim against "UnumProvident"[2] on grounds that it:

- Failed to disclose to Dr. Peterson that it believed the Policy was subject to and governed by ERISA;

- Failed to inform Dr. Peterson of the reasons why it believes the policy is subject to and governed by ERISA;

- Misrepresented to Dr. Peterson that the number of hours spent performing surgery versus seeing patients is of no importance as to the definition of disability for opthalmic surgeons.

- Misrepresenting that he would be specifically insured as an opthalmic surgeon specializing in cataract and implant surgery regardless of the number of hours he spent performing surgery.

See proposed Amended Complaint Count Two, ¶64.

In order to establish a claim for negligent misrepresentation, a plaintiff must demonstrate that (1) the defendant made a misrepresentation; (2) the defendant knew, or reasonably should have known that the statement was untrue; and (3) the plaintiff's reliance on the misrepresentation was both justifiable and detrimental. See Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997); Clt Telecomms. Corp. v. Colonial Data Techs. Corp., 1999 U.S. Dist. LEXIS 4921, 20-21 (D. Conn. 1999). The proposed amendment fails for three reasons:

First, the plaintiff cannot maintain a negligent misrepresentation claim against UnumProvident for representations made before the company was formed. (Amended Complaint, ¶63–68).

---

[2] In his proposed Amended Complaint, plaintiff lumps both Provident and UnumProvident together and refers to both companies as "UnumProvident" as though they are one and the same. As set forth in the accompanying Affidavit of Susan Roth, they are separate companies. Referring to both companies as "UnumProvident" in the context of this alleged misrepresentation claim is confusing, especially since UnumProvident was not formed until 1999.

Second, the plaintiff cannot maintain a claim for negligent misrepresentation based on the failure to notify him at the time of purchase that the Policy would be governed by ERISA, where Provident had no duty to do so and no way of knowing this information. (Amended Complaint, ¶¶9-18 & 64(a) and (b)).

And third, plaintiff cannot maintain a claim for negligent misrepresentation based on representations that were not by either defendant to him. (Amended Complaint, ¶22).

### A. Plaintiff Cannot Maintain A Claim For Negligent Misrepresentation Against Defendant, UnumProvident Because It Did Not Exist At The Time Of The Alleged Misrepresentations.

The plaintiff cannot maintain a cause of action against UnumProvident for negligent misrepresentations allegedly made over a decade before UnumProvident was formed.

The first element of a negligent misrepresentation claim is that the defendant must have made a misrepresentation. See Foy, 127 F.3d at 233. Plaintiff purchased the Policy in 1986 from Provident. (Proposed Amended Complaint, ¶7,8). All of the allegations which plaintiff contends support its claim for negligent misrepresentation against UnumProvident occurred in 1983, 1986 and 1987. See Proposed Amended Complaint, ¶7-15. UnumProvident did not exist until 1999. See Ex. A at ¶5. Therefore UnumProvident could not have made any of the alleged misrepresentations in 1986.

Plaintiff's excuse for his attempt to assign liability to UnumProvident for these alleged misrepresentations is that he claims that UnumProvident is the "alter ego" of Provident. See Plaintiff's Memo in Supp. at p.8. This is incorrect. The alter ego theory has been applied in instances where a company has closed its doors, only to reopen, under an entirely different name in order to avoid liability. See South Eastern Envelope Co., Inc., 246 N.L.R.B. 423 (1979). This is not all the relationship between Provident and UnumProvident. As set forth in the Roth Affidavit (Ex. A), UnumProvident is the holding company for Provident. See Ex. A at ¶3-5.

UnumProvident has not assumed liability for the claims maintained against Provident. See Ex. A at ¶6. Provident continues to be a Tennessee corporation in good standing and maintains all liability for its insurance contracts. See Ex. A at ¶9. Therefore, there is no basis for an alter ego theory to assign liability to UnumProvident where Provident remains an operating insurance company and maintains all liability for its insurance contracts. Here, plaintiff as a matter of law cannot establish that UnumProvident made any of the representations that form the basis for his claim for negligent misrepresentation.

### B. The Defendants Had No Duty To Disclose Whether A Policy Is Governed By ERISA.

Plaintiff seeks to amend his Complaint to allege that the defendants made negligent misrepresentations by failing to tell him that his policy was governed by ERISA.[3] (Amended Complaint, ¶¶9-18 & 64). Dr. Peterson seems to claim that Provident had some duty to tell him that his employer's salary allotment agreement with Provident would convert the policy into an ERISA plan. (¶13-18). Based on these allegations, plaintiff does not allege that the defendants supplied false information. Instead, he claims that the defendants' silence has the same effect as a misrepresentation.

"To constitute fraud by non-disclosure or suppression there must be a failure to disclose known facts and, as well, a request or an occasion or circumstances which impose a duty to speak." As stated in Ceferatti v. Boisvert, 137 Conn. 280, 283, 77 A.2d 82 (1950). "…Mere silence is not actionable in a transaction in which the parties deal at arms length unless the circumstances or the existence of a confidential relationship give rise to a duty to speak." Also, in Franchey v. Hannes, 152 Conn. 372, 378, 207 A.2d 268 (1965). A failure to disclose can be

---

[3] When Dr. Peterson filed his Complaint in 2002, he pled 2 counts under ERISA. Thus, it appears that he already knew that his Policy was governed by ERISA.

deceptive only if, in light of all the circumstances, there is a duty to disclose. Olson v. Accessory Controls & Equipment Corp., 254 Conn. 145, 180, 757 A.2d 14 (2000).

Thus, in order to recover under this theory there must have been an affirmative duty in 1986 for an insurer to disclose the governing law of a particular policy. There is no statutory or case law imparting upon an insurer any affirmative duty to disclose whether or not a policy may or may not be governed by ERISA. There is simply no basis for such an allegation and therefore plaintiff cannot maintain a claim for negligent misrepresentation based on this allegation.

**C.    Defendants Cannot Be Held Responsible For Failing To Disclose Information That Was Not Known At The Time.**

1.    Provident could not know in 1986 that this policy would be governed by ERISA in 2000.

To sustain a cause of action for negligent misrepresentation for failure to disclose information, plaintiff must show that the defendant failed to disclose known facts. Ceferatti, supra at 283.

Here, the defendants could not have known in 1986 whether the Policy would ultimately be governed by ERISA. The determination of whether a particular policy is part of an ERISA plan is not the insurer's decision. A "'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Grimo v. Blue Cross/Blue Shield of Vt., 34 F.3d 148, 151 (2d Cir. 1994) (citation omitted; alteration in original); accord Pegram, 530 U.S. at 223 ("Rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services are the sorts of provisions that constitute a plan."); see also Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1209 (2d Cir. 2002).

Moreover, the determination as to whether or not a policy is part of an ERISA plan is made at the time of the claim and not at the origination of the policy. For example in Grimo v. Blue Cross/Blue Shield, 34 F.3d 148, 153 (2nd Cir. 1994), the Second Circuit held that merely because the employer had originally made premium payments on behalf of its employees years before did not mean the that the policy was still part of an ERISA plan. "At least where the employer has made a decision not to fund the plan for the indefinite future and has made no contributions during the period in which the triggering event may have implicated the policy's coverage, a past contribution alone does not indicate that an ERISA plan has been 'maintained.'" Id.

Accordingly, in 1986, Provident could not have known whether this Policy would be governed by ERISA if the plaintiff sometime in the future filed a disability claim. For instance, in 1986 Provident may have been aware that Dr. Peterson's employer obtained the policy for Dr. Peterson and the other doctors in the medical practice as a benefit of their employment. But Provident could not have known how the employer would treat the policy in the future, and whether it would continue to be part of an ERISA plan years later if and when Dr. Peterson submitted a claim under the Policy. A salary allotment agreement between Provident and the plaintiff's employer signed in 1983, some three years before Dr. Peterson purchased the Provident policy, may certainly be evidence of an employer's intent to form an ERISA plan, but on its own would not require that an insurance company draw the conclusion that the policy was subject to ERISA or bring this fact to the insured's attention. Accordingly, plaintiff's allegations in this regard cannot sustain a claim for negligent misrepresentation.

        2.        Defendants also could not know in 1986 that all of plaintiff's state law claims in 2000 would be preempted by ERISA.

Plaintiff alleges that he relied on the defendants' failure to disclose that the policy was governed by ERISA to his detriment. (Amended Complaint, ¶64-65).

Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provide for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. <u>Aetna Health Inc. v. Davila</u>, __ U.S. __; 124 S. Ct. 2488, 2495 (2004). The fact that a policy is governed by ERISA does not mean that it automatically is "detrimental" to the plaintiff. In fact, it is to the plaintiff's benefits to have ERISA govern the adjudication of claims under the policy.

However, if this Policy is part of an ERISA plan then all of the plaintiff's state law claims that relate to the Plan, including his CUIPA and CUPTA claims, are preempted. A claim for benefits under ERISA will not entitle Dr. Peterson to extra contractual damages. <u>Massachusetts Mutual Life Ins. Co. v. Russell</u>, 473 U.S. 134, 148 (1985). Although not specifically stated in his complaint or in his memorandum of law, apparently the plaintiff believes ERISA is detrimental because of the policy is governed by ERISA, then he cannot pursue an award of multiple damage. Therefore, the essence of plaintiff's claim is that the defendants had a duty to disclose the fact that not only that his policy was governed by ERISA (which they would have no way of knowing in 1986), and that their alleged failure to disclose this fact caused him harm because ERISA preemption is detrimental to him.

However, in 1986 Provident did not know the extent of ERISA preemption. The Supreme Court's interpretation of the extent of ERISA preemption occurred in 1987 in <u>Pilot Life</u>

Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987).  In Pilot Life, the Supreme Court addressed ERISA preemption insurance bad faith claims.  Since that time the Supreme Court has greatly expanded the reach of preemption in its interpretation of ERISA.  Aetna Health Ins. V. Davila, ___ U.S. ____ 124 S.Ct. 2488, 2495-2502 (2004)(discussing preemption case law).  When the Policy was purchased in 1986, the Pilot Life decision had not been rendered and the extent of ERISA preemption that exists today or in 2000 when Dr. Peterson submitted his first disability claim was not known by anybody.  Thus, because Provident could not have know in 1986 that ERISA would govern Dr. Peterson's policy when he allegedly became disabled some 14 years later and could not have known the extent of ERISA preemption in 1986 prior to the 1987 Pilot Life decision, plaintiff cannot establish that Provident failed to disclose known facts.  As a result, Dr. Peterson's misrepresentation claim based on these allegations fails as a matter of law.

> **D.     Statements Made To Anyone Other Than The Plaintiff Cannot Form the Basis Of A Negligent Misrepresentation Claim.**

Plaintiff alleges that UnumProvident and Provident represented to him that "the number of hours spent doing surgery versus the number of hours spent seeing patients is of absolutely no importance." (Amended Complaint, ¶22).  These representations were not made by Provident to Dr. Peterson.  The alleged representation that plaintiff quotes in his Amended Complaint is apparently from a letter to Dr. Richard Getnick not to the plaintiff.[4]  The letter is from an employee of Kenney, Webber and Lowell, Inc., an insurance broker.  The letter purports to summarize a conversation the agent allegedly had with "the local Provident office" but it is not from Provident.

In order to sustain a claim for negligent misrepresentation the alleged statement must have been made to the plaintiff.  Martin v. McHugh, 2004 Conn. Super LEXIS 817

---

[4]   This letter was previously submitted to the Court by plaintiff as Exhibit 2 to Plaintiff's Objection to Ruling By Magistrate Judge dated May 10, 2004.  It is attached to this Memorandum as Exhibit B.

(2004)(dismissing a claim for negligent misrepresentation where the statement was made to the court and not to the plaintiff). It is insufficient for the alleged representation to have been made to another. Plaintiff cannot hold the defendants liable for representations made by another defendant to another person simply because information may have been passed along. As a result, any claim for misrepresentation based on statements made to anyone other than plaintiff must fail as a matter of law.

### III.  PLAINTIFF'S CLAIM ON HIS SECOND DISABILITY CLAIM FAILS AS MATTER OF LAW BECAUSE IT IS PREMATURE.

Plaintiff seeks to amend his complaint to include allegations and claims based on a second disability claim. (Amended Complaint, ¶¶24-25, 47-54 & 61). Although this second claim has been denied, plaintiff has not appealed the decision, and Provident has yet to render a decision on the appeal as required by ERISA. In his Complaint, the plaintiff alleges in the alternative a claim for benefits under ERISA. If ERISA governs, plaintiff cannot maintain a cause of action on his second disability claim because he has failed to exhaust his administrative remedies.

The Second Circuit requires exhaustion of administrative remedies on all benefit claims brought under ERISA. See Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993). More specifically, claimants must pursue all administrative remedies provided by their plan pursuant to statute, which includes carrier review in the event benefits are denied. See id. (noting requirement that all plans provide for carrier review); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) (affirming denial of leave to amend complaint where the plaintiff "made no attempt, as required, to exhaust the administrative remedies provided for under the plan"); see also Chapman v. Choicecare Long Island Term Disability Plan, 2002 U.S. App. LEXIS 24460, 11-12 (2d Cir. 2002). Failure to exhaust administrative remedies is

sufficient ground for dismissal of an ERISA claim. See e.g. Holm v. First Unum Life Ins. Co., 7 Fed. Appx. 40, 41 (2d Cir. 2001); Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594-95 (2d Cir. 1993).

Although plaintiff alleges in the Amended Complaint that he has exhausted all administrative remedies required by the Policy; this simply is not true. (Amended Complaint, ¶57). In fact, plaintiff admits in his Memorandum in Support of Motion to File Amended Complaint that he has not appealed the benefit decision. (Plaintiff's Memo In Supp. at pp. 9-10). The only reason that plaintiff gives for his failure to exhaust his administrative remedies is that it would be more efficient to combine this claim with his existing lawsuit. Id. This is not a justification for failure to exhaust administrative remedies. Failure to exhaust remedies may be excused on the grounds of futility "only 'where claimants make a clear and positive showing that pursuing available administrative remedies would be futile.'" Greifenberger v. Hartford Life Ins. Co., 2003 U.S. Dist. LEXIS 22810 (S.D.N.Y. 2003)(internal citation omitted). Plaintiff has made no such allegation in his amended complaint or in his brief in support thereof. In any event, this argument finds no support in the record. See Kennedy, 989 F.2d at 594 (record must contain a " clear and positive showing that pursuing available administrative remedies would be futile") (internal quotation marks omitted). Time efficiency is not a valid justification for dispensing with the requirement that a plaintiff must exhaust his administrative remedies before initiating an action. As a result, plaintiff cannot maintain any cause of action based on his second claim for benefits at this time. Therefore, plaintiffs proposed amendment to include allegations arising from his second claim for disability benefits is futile and should be denied.

## CONCLUSION

For each of the foregoing reasons, the plaintiff's Motion to File Amended Complaint should be denied.

> UNUMPROVIDENT CORPORATION
> AND
> PROVIDENT LIFE AND ACCIDENT
> INSURANCE COMPANY
>
> By their attorney,
>
>    /s/ Kristina H. Allaire
> Joan O. Vorster, Esq.
> BBO # CT20230
> Kristina H. Allaire, Esq.
> Ct #22072
> Mirick, O'Connell, DeMallie & Lougee, LLP
> 100 Front Street
> Worcester, MA 01608-1477
> Phone: (508) 791-8500
> Fax:    (508) 791-8502

Dated: August 6, 2004

## CERTIFICATE OF SERVICE

I, Kristina H. Allaire, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to Augustus R. Southworth, III, Domenico Zaino, Jr., Carmody & Torrance, LLP, 50 Leavenworth Street, P.O. Box 1110, Waterbury, CT 06721-1110, and Samuel B. Mayer, Esq., 46 Woodbury Avenue, Stamford, CT 06907.

>    /s/ Kristina H. Allaire
> Kristina H. Allaire, Esq.

Dated: August 6, 2004