UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WALTER SCOTT PETERSON : | CIVIL ACTION NO. |
| Plaintiff, : | 3:02CV01844 (CFD) |
| : | |
| VS. : | |
| : | AUGUST 19, 2004 |
| UNUMPROVIDENT CORPORATION, : | |
| Defendant : | |
| PROVIDENT LIFE AND ACCIDENT : | |
| INSURANCE COMPANY, : | |
| Defendant : | |
| HILB, ROGAL AND HAMILTON COMPANY, : | |
| Defendant | |

### REPLY TO DEFENDANTS PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY & UNUMPROVIDENT CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

The plaintiff, Walter Scott Peterson, M.D., has reviewed the defendants Provident Life & Accident Insurance Company ("Provident") and UnumProvident Corporation's ("Unum") ("Provident" and "UnumProvident" are collectively referred to as "UnumProvident" or the "defendants") opposition to the plaintiff's Motion to Amend the Complaint. In reply, the plaintiff raises the following points:

1. First, Unum's claim that it cannot be held liable because it did not exist at the time of the initial misrepresentations must be rejected as it fails to recognize the nature of Dr. Peterson's negligent misrepresentation claim. Dr. Peterson's claim is based on UnumProvident's <u>continuing course of conduct</u> from the time when Dr. Peterson purchased the long-term disability contract from <u>Provident</u> through the date <u>Unum</u> investigated Dr. Peterson's claim for benefits and notified Dr. Peterson that his claim was denied, to the present. See Proposed Amended Compl., Count Two ¶64—67.

{W0310003.2} CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

Specifically, Dr. Peterson has alleged that he has a special relationship with UnumProvident whereby he has paid UnumProvident approximately $5725 annually for 24 years in consideration for the promises it made to him in the long-term disability contract. Based on this ongoing insurer/insured relationship, UnumProvident "has a continuing duty to use reasonable care in providing Dr. Peterson accurate information concerning the Policy" and that "UnumProvident's actions constitute a continuing violation of its duty of reasonable care toward Dr. Peterson." Id. at ¶ 67. Further, implicit in this ongoing relationship is a covenant of good faith and fair dealing. See e.g., Buckman v. People Exp., Inc., 205 Conn. 166, 170-171 (1987) ("[a]n implied covenant of good faith and fair dealing has been applied by this court in a variety of contractual relationships, including ... insurance contracts") (internal citations omitted) quoting Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 566, 479 A.2d 781 (1984).

Thus, while the defendants correctly note that Unum did not exist at the time Provident made the *initial* misrepresentations and *initially* failed to disclose important information, UnumProvident breached its *continuing* duty of care toward Dr. Peterson by failing to provide him accurate and important information concerning the long-term disability policy that he purchased and paid annual premiums of approximately $5725 for 24 years. Thus, the plaintiff has properly alleged a claim for negligent misrepresentation against Unum and Provident.

2. Second, Dr. Peterson has properly alleged that Unum is liable for the acts of Provident. Unum suggests that the alter ego theory of liability is only applicable "where a company has closed its doors, only to reopen, under an entirely different name to avoid liability." See Defendant's Memo. In Opp. at p. 7. This is not accurate. It is well recognized under Connecticut law that the alter ego doctrine or "identity doctrine" can be used to hold one corporation liable for the acts of another

{W0310003.2} CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

2

corporation. The Connecticut Supreme Court has stated that if a "plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." (Internal quotation marks omitted.) Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc., 187 Conn. 544, 554 (1982). "The identity rule primarily applies to prevent injustice in the situation where two corporate entities are, in reality, controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance of corporate formalities between the two entities." Id., at 560.

Further, as UnumProvident is undoubtedly aware, courts have permitted plaintiffs to pursue the alter ego theory of liability specifically against UnumProvident in other cases. For example, in Gallagher v. The Paul Revere Life Ins. Co., 2004 WL 557380 (N.D. Ill. 2004), UnumProvident argued that the claims asserted against it must be dismissed because it did not issue any of the disability policies at issue. The court denied UnumProvident's motion, stating that "if a plaintiff alleges that a parent is the alter ego of its subsidiary, dismissal of her complaint is unwarranted if she alleges any facts which suggest that the corporations operated as a single entity." Id. at *2. In Gallager, the plaintiff alleged that "UnumProvident controlled all of its subsidiaries' claims processing and policies and made the decision to deny [the plaintiff's] claim for benefits." Id. at *3. This, according to the court, was "enough to place UnumProvident on notice of the plaintiff's claims and satisfy the undemanding federal notice pleading standard at this early stage in the proceedings." Id. (attached at Exhibit 1) See also, Rosen v. Provident Life & Accident Ins. Co., 2003 WL 22254805

{W0210005;2} WAIT, CARLSON & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
3

(E.D. Pa. 2003) (stating that the determination of whether UnumProvident can be held liable under an alter-ego theory requires an examination of numerous factors that are in dispute, and, therefore, cannot be resolved on summary judgment) (attached as Exhibit 2); Grunblatt v. UnumProvident Corp., 270 F. Supp. 2d 347 (E.D.N.Y. 2003) (stating that an attempt to "pierce the corporate veil" is a "fact specific inquiry" not amenable to resolution on a motion to dismiss); Meshkov v. UnumProvident Corp., 209 F. Supp. 2d 459 (E.D. Pa. 2002) (denying Provident Life's motion to dismiss where the plaintiff adequately plead that Provident Life was the alter ego of Paul Revere).

Connecticut courts also impose successor liability on companies that purchase the assets of other companies in certain circumstances. "Under Connecticut law, a corporation which purchases the assets of another company does not automatically become liable for the debts and liabilities of its predecessor unless there exists one of four established exceptions to this general rule. Specifically, the party seeking to impose liability on the basis of de facto successorship must establish: (1) that the purchase agreement expressly or impliedly so provides; (2) there was a merger or consolidation of the two firms; (3) the purchaser is a "mere continuation" of the seller; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." See Ricciardello v. JW Gant & Co., 717 F. Supp. 56, 57 (D.Conn.1989). Another recognized exception to the general rule is the "product line" exception, which is generally applied to assess liability where the successor corporation may hold itself out as being the same name or product, operation and sale, thereby receiving the benefit of past goodwill, it should likewise bear the burden of past operation. Kennedy v. OshKosh Truck Corp., Superior Court, Judicial district of Hartford, Docket No. 920510394S (January 20, 1995, Schimelman, J.) (13 Conn. L. Rptr. 376) (attached as Exhibit 3).

In this case, Dr. Peterson has plead sufficient facts to state a cause of action against UnumProvident. Dr. Peterson has alleged in his proposed Amended Complaint that: "Provident does not operate independently of Unum and does not have its own employees nor conduct its own insurance claim handling activities, all such activities (specifically including all activities relating to Dr. Peterson's claims for disability benefits) having been conducted at all material times by defendant Unum by and through its own employees, acting under the direction and control of defendant Unum. The officers of Provident are also officers or employees of Unum. At all material times the Chief Executive Officer of Provident is or was the same person as the Chief Executive Officer and Board Chairman of Unum." Proposed Amended Compl. ¶ 3. Further, all, or nearly all, of the individuals who were involved in the review of Dr. Peterson's claim for benefits and the decision to deny his claim were either employed by or considered an "independent contractor" of UnumProvident, <u>not</u> Provident.

3.  UnumProvident states in its brief that, "Dr. Peterson seeks to amend his Complaint to allege that the defendants made negligent misrepresentations by failing to tell him that his policy was governed by ERISA." UnumProvident further states that, "Dr. Peterson seems to claim that Provident had some duty to tell him that his employer's salary allotment agreement with Provident would convert the policy into an ERISA plan." See Defendant's Memo. In Opp. at p. 8. These statements do not accurately represent the basis for Dr. Peterson's negligent misrepresentation claim.

Dr. Peterson's negligent misrepresentation claim is based, in part, on UnumProvident's failure to disclose its "belief" that the long-term disability policy at issue constitutes a ERISA plan and the reasons supporting this belief. UnumProvident believes, at least in part, that the long-term disability policy constitutes an ERISA plan because Dr. Peterson's employer executed a Salary Allotment Agreement. Proposed

{W0310003.2} CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
5

Amended Compl. ¶¶ 9-18, Count Two, ¶¶ 63-68. Dr. Peterson has alleged that UnumProvident offered training seminars to its producers and agents concerning long-term disability policies and encouraged them to have clients execute these Salary Allotment Agreements to streamline the process for collecting premiums. Proposed Amended Compl. ¶¶ 9-18. In doing so, however, UnumProvident did not advise these individuals or Dr. Peterson of its belief that a Salary Allotment Agreement could convert a long-term disability contract into an ERISA plan. Proposed Amended Compl. ¶¶ 17-18. UnumProvident admits in its brief that, "[a] salary allotment agreement between Provident and the plaintiff's employer signed in 1983, some three years before Dr. Peterson purchased the Provident policy, may *certainly* be evidence of an employer's intent to form an ERISA plan." (emphasis added) Defendant's Memo. In Opp. at p. 10. This is precisely the point. If UnumProvident believed or was specifically intending to establish ERISA plans by having clients execute a Salary Allotment Agreement, then it had a duty to disclose this belief or intent to Dr. Peterson before he spent a lifetime paying premiums for the policy.

UnumProvident has not cited any case law holding that it did not have a duty to Dr. Peterson to disclose this important information and refrain from making misrepresentations regarding the terms of the long-term disability. Indeed, Connecticut courts *have* permitted insureds to bring claims of negligent misrepresentation against their insurers based on their agent's negligent acts in the procurement and issuance of the insurance contract. See e.g., Carrafiello v. Lincoln Nat. Life Ins. Co., 2003 WL 1227610 (Conn. Super. 2003) ("an insurance company may be liable for an agent's negligent acts during the course of procurement and issuance of the insurance contract") citing Gorlo v. Maryland Casualty Co., CV 89-2564765, J.D. of Fairfield at Bridgeport, 5 Conn. L. Rptr. 36 (Sept. 20, 1991, Katz, J.) (attached as Exhibit 4).

4. UnumProvident claims that Dr. Peterson cannot maintain a claim for negligent misrepresentation based on statements that UnumProvident made to other doctors. The Connecticut Supreme Court has stated that "[t]he governing principles [for a negligent misrepresentation claim] are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. " (Internal quotation marks omitted.) Craine v. Trinity College, 259 Conn. 625, 660-61 (2002).

There is no dispute that Dr. Peterson and certain of his colleagues purchased long-term disability policies from Provident at or around the same time and that some of these policies were similar. There can also be no dispute that representatives of Provident met with Dr. Peterson and his colleagues to discuss the terms of the policies and issues that they had in common. During these meetings and in written communications to Dr. Peterson and his colleagues, Provident, through its employees and other agents, made certain representations to Dr. Peterson and his colleagues concerning the terms of the policies.

The doctors sometimes had similar questions and concerns about the terms of their individual policies. Rather than having each doctor write separate letters to Provident, Dr. Getnick would often take responsibility for getting these questions answered and would communicate the answers to the other doctors. UnumProvident knew or should of known that representations made to Dr. Getnick would be shared with the other doctors based, for example, on the similarity of their concerns, the group meetings they had, and the similarity of their policies.

{W0380803121} CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
7

5.  Dr. Peterson has properly alleged claims against UnumProvident based on its denial of Dr. Peterson's second claim for benefits. UnumProvident's argument that this claim is "premature" assumes that the long-term disability plan is an ERISA plan, which it is not. Defendant's Memo. In Opp. at p. 13. Therefore, there is no basis for objecting to Dr. Peterson's claims that UnumProvident improperly denied his second claim for benefits.

Further, as Dr. Peterson has consistently maintained, the long-term disability plan is not an ERISA plan and falls squarely within the Department of Labor's safe-harbor regulations as a non-ERISA plan. See 29 C.F.R. § 2510.3-1(j). [1] There is absolutely no mention of ERISA anywhere in the policy and no statement in the policy requiring or even advising Dr. Peterson that he has the option to appeal UnumProvident's denial of his claim for benefits. See Policy (attached as <u>Exhibit 5</u>). Thus, contrary to UnumProvident's assertions, Dr. Peterson's statement in his Amended Complaint that he has exhausted all administrative remedies "required" by the Policy is absolutely true. Defendant's Memo. In Opp. at p. 14. What is untrue, is UnumProvident's assertion that the policy provides an appeal process. Defendant's Memo. In Opp. at p. 5 ("Plaintiff has not appealed this decision as provided in the Policy.").

---

[1] UnumProvident has alleged in its brief that Dr. Peterson's employer "paid 100% of the premiums" for the long-term disability policy at issue. See Defendant's Mem. In Opp. at p. 3-4. This statement is misleading. Dr. Peterson was responsible and paid for 100% of the premiums for his long-term disability contract. Each year, Dr. Peterson would write a personal check to his employer for the full amount of the premiums due for his policy. Dr. Peterson's employer would deposit Dr. Peterson's check, along with the checks of other doctors who purchased similar policies, and would forward one check to UnumProvident in accordance with the Salary Allotment Agreement. Dr. Peterson has produced copies of his check register for 1987, 1988, 1992, 1994, and 1996, which demonstrate that he paid the premiums for the policy.

Respectfully Submitted,
WALTER SCOTT PETERSON, M.D.

BY: _____
Augustus R. Southworth III (Bar No. ct04166)
asouthworth@carmodylaw.com
Domenico Zaino, Jr. (Bar No. ct20082)
dzaino@cardmodylaw.com
Carmody & Torrance LLP
50 Leavenworth Street, P.O. Box 1110
Waterbury, CT 06721-1110
Phone: 203-573-1200
Facsimile: 203-575-2600

{W0310903}2} CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
9

## **CERTIFICATION**

This is to certify that on this the 19th day of August 2004, a copy of the foregoing Reply to Defendants' Provident Life & Accident Insurance Company & UnumProvident Corporation's Opposition to Plaintiff's Motion to Amend the Complaint was mailed, postage pre-paid, to the following counsel of record and pro se parties:

Joan O. Vorster, Esq.
Kristina H. Allaire, Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477

Samuel B. Mayer, Esq.
Duane Morris
46 Woodbury Avenue
Stamford, CT 06907

_____
Augustus R. Southworth III
Domenico Zaino Jr.