# EXHIBIT 4

companies; that he was "appointed" by Lincoln to solicit insurance applications in a "territory" of Connecticut on behalf of Lincoln; and that he agreed to promote the interests of the company (Lincoln).

**\*\*2** This evidence is sufficient to present a question of fact as to whether Thompson was an agent of Lincoln.

To the extent that Count Four and Count Six impute the alleged negligence and negligent representations of Thompson to his principal, Lincoln, it is noted that an insurance company may be liable for an agent's negligent acts during the course of procurement and issuance of the insurance contract. *Gorlo v. Maryland Casualty Company,* CV89-2564765, J.D. of Fairfield at Bridgeport, 5 Conn. L. Rptr. 36 (Sept. 20, 1991, Katz, J.).

The allegation of breach of contract in Count One is that Thompson, acting as agent on behalf of his principal, Lincoln, contracted with the plaintiff to provide the plaintiff with a policy containing very specific benefits and that the plaintiff received a policy that did not contain such benefits. A question of fact exists as to whether or not such a contract existed between the parties.

### STATUTE OF LIMITATIONS

In regard to Counts Two, Four, Six and Seven, the plaintiff alleges claims against Lincoln, which the defendant-insurer maintains are barred by the statute of limitations. As to Count Four (Negligence) and Count Six (Negligent Misrepresentation), the court (Thim, J.) in a memorandum of decision dated June 11, 2002, held that the allegations of negligence and negligent misrepresentation as to Thompson were not barred by the statute of limitations. That holding was based in part on evidence that every three years Thompson would contact the plaintiff and discuss the insurance coverage. As Thompson's principal, those acts and omissions are imputed to Lincoln as well.

The court also agrees with the plaintiff's argument that the plaintiff first became aware of the injury complained of--the termination of the disability benefits which he had been receiving for several years--when the payments stopped coming in November 1996. He commenced suit within the time permitted by statute.

" 'Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action." *Lambert v. Stovell,* 205 Conn. 1, 6, 529 A.2d 710 (1987). The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. *Burns v. Hartford Hospital,* 192 Conn. 451, 460, 472 A.2d 1257 (1984).

The plaintiff's claims as to those counts are not barred by the statute of limitations.

### STATUTE OF FRAUDS (Section 52-550, C.G.S.)

The defendant claims that the contract which may have existed between the plaintiff and Lincoln should be deemed barred by the statute of frauds. At issue is the proscription that no civil action may be maintained, unless in writing and signed by the party to be charged, if the contract is one which, by agreement, is not to be performed within one year of its making is not applicable in the instant case. Our Supreme Court has held that the proper test is whether or not a contract's "terms are drawn so that it cannot by any possibility be performed fully within one year." *C.R. Klewin, Inc. v. Flagship Properties,* 220 Conn. 569, 580 (1991). This court agrees with the plaintiff's contention that there is nothing in the terms of the subject policy which prohibits the contract from being performed in one year. For example, a person with such a policy could qualify for disability benefits and die within the year. Death within the year puts an end to the contract and it is not deemed to be within the statutes of frauds. *Strang v. Witkowski,* 138 Conn. 94, 98-100 (1951).

**\*\*3** The court also agrees with the plaintiff's contention that he undertook performance pursuant to the policy, including payment of monthly premiums in expectation of being insured which, arguably, could take the contract out of the statute of frauds. Whether his performance is sufficient to take the contract out of the statute of frauds is a question of fact. *Milazzo v. Schwartz,* 44 Conn.App. 402, 407 (1997).

### ESTOPPEL

In his memorandum of decision of June 11, 2002,

# EXHIBIT 5

DISABILITY INCOME PROTECTION COVERAGE

REQUIRED OUTLINE OF COVERAGE

POLICY SERIES 335

## 1. READ YOUR POLICY CAREFULLY

This outline of coverage provides a very brief description of the important features of your policy.  This is not the insurance contract and only the actual policy provisions will control.  The policy itself sets forth in detail the rights and obligations of both you and your insurance company.  It is, therefore, important that you READ YOUR POLICY CAREFULLY.

## 2. DISABILITY INCOME PROTECTION COVERAGE

Policies of this category are designed to provide, to persons insured, coverage for disabilities resulting from covered Injuries or Sickness, subject to any limitations set forth in the policy.  Coverage is not provided for basic hospital, basic medical-surgical, or major-medical expenses.

## 3. BENEFITS

a.  **General Definitions**

**Benefit Schedule** means the schedule of benefits attached to this Outline.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable.  The number of days is shown in this Outline's Benefit Schedule.  These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

1.  you are not able to perform the substantial and material duties of your occupation; and
2.  you are receiving care by a Physician which is appropriate for the condition causing the disability.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled.  If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

Outline of Disability Coverage for WALTER SCOTT PETERSON MD    6-335-751908

000003

b.  **Basic Benefits of Your Policy**

The basic Monthly Benefit for Total Disability is shown in the Benefit Schedule. Benefits start on the day of Total Disability after the Elimination Period. Benefits are payable for as long as the applicable maximum benefit periods also shown in the Benefit Schedule.

**Presumptive Total Disability** – You will be presumed totally disabled if Injuries or Sickness result in the entire and permanent loss of: 1) speech; 2) hearing in both ears; 3) sight of both eyes; or 4) use of both hands, both feet, or one hand and one foot.

The basic Monthly Benefit for Total Disability will be paid even if you can work. Further medical care will not be required. Benefits will be payable for life.

**Waiver of Premium** – After you have been disabled for 90 days during a period of total and/or residual disability we will:

1.  refund any premiums which became due and were paid while you were totally and/or residually disabled; and
2.  waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

**Transplant Surgery** – If you are disabled because you donate a part of your body to another person, we will consider it to be the result of a Sickness.

**Cosmetic Surgery** – If you are disabled from surgery to improve your appearance or correct disfigurement, we will consider it to be the result of a Sickness.

**Pregnancy** – If you are disabled from pregnancy or childbirth, we will consider it to be the result of a Sickness.

**Rehabilitation** – You may participate in a program of occupational rehabilitation while disabled. This will not of itself affect Total Disability payments. If we approve the program we will pay certain training expenses up to an amount equal to three times one basic Monthly Benefit for Total Disability.

c.  **Additional Benefit**

The following optional benefit is also a part of your policy and is shown in the Benefit Schedule. Additional premium is required.

**Residual Disability Benefits** pay a percentage of the Total Disability Monthly Benefit when, due to Injuries or Sickness, you suffer a loss of earnings of 20% or more, and are receiving care by a physician. (During the Elimination Period only, you must not be able to work fully because of the Injuries or Sickness.) A loss of earnings over 75% is deemed a 100% loss and 100% of your Total Disability Monthly Benefit will be paid. Residual benefits are payable for as long as stated in the policy.

When a disability lasts more than one year, Cost of Living indexing (based on the Consumer Price Index) will be applied to your pre-disability earnings. As they increase, your loss of earnings becomes greater and this, in turn, produces increases in your Residual Disability Monthly Benefit.

Recovery Benefits are payable for up to three months following a period for which benefits were paid if you are under age 65 when you return to full time work with a loss of earnings of at least 20%. Benefits will be the greater of the Residual formula amount for each of the first three months or the applicable percentage (100% first month, 75% second month and 50% third month) of the actual claim payment made for the 30 days prior to your return to work.

## 4. EXCLUSIONS

This policy does not cover loss caused by war or act of war.

The policy will only cover pre-existing conditions as follows:

1. During the first two policy years, a pre-existing condition will be covered if it was disclosed and not misrepresented in answer to a question in the application for the policy, and we did not exclude it from coverage.
2. We will cover any condition not excluded by the policy for a disability that starts after two years.

Pre-existing conditions are defined in the policy.

If there are any additional exclusions, they will be referred to in the Policy Schedule. If there is an exclusion or limitation which applies only to a benefit rider added after the policy is issued, it will be included with the rider.

## 5. RENEWABILITY OF YOUR POLICY

**Non-Cancellable and Guaranteed Continuable to Age 65 at Guaranteed Premiums:** You can continue this policy to age 65 by paying the premiums on time.

**Conditional Right to Renew After Age 65; Premiums are not Guaranteed:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our rates then in effect at time of renewal. The basic policy, if renewed before age 75, will provide a 24 month maximum benefit period for Total Disability and Presumptive Total Disability. A 12 month maximum benefit period will be provided if the policy is renewed at or after age 75.

If the policy is continued, all of the basic benefit provisions will be included in the continued policy. Any additional benefit provision contained in the policy will not be included unless it is so named as one that will be included in the continued policy.

335-OC-CT

WALTER SCOTT PETERSON MD    6-335-751908

000005

## BENEFIT SCHEDULE FOR THIS OUTLINE

------------------------------------------------------------------------

Elimination Period .................... 90 days of Total and/or Residual Disability

Monthly Benefit for Total Disability ..................................... $11,950.00

Maximum Benefit Periods:

**Injuries:**

Total Disability starting before age 65 .................................... for Life
Total Disability starting at age 65 but before age 75 ............... 24 months
Total Disability starting at or after age 75 ....................... 12 months

**Sickness:**

Total Disability starting before age 60 .................................... for Life
Total Disability starting at age 60 but before age 61 ............... to age 65
Total Disability starting at age 61 but before age 62 ............... 48 months
Total Disability starting at age 62 but before age 63 ............... 42 months
Total Disability starting at age 63 but before age 64 ............... 36 months
Total Disability starting at age 64 but before age 65 ............... 30 months
Total Disability starting at age 65 but before age 75 ............... 24 months
Total Disability starting at or after age 75 ....................... 12 months

--------------------------------ADDITIONAL BENEFIT--------------------------------

Residual Disability Benefit




This Outline of Coverage was prepared on 01/05/87 and
replaces any previous description of coverage furnished you.

Insured - WALTER SCOTT PETERSON MD                    Policy Number 6-335-751908


000006

# PROVIDENT
# LIFE &ACCIDENT
### INSURANCE COMPANY

CHATTANOOGA, TENNESSEE 37402

WALTER SCOTT PETERSON MD
87 GRANDVIEW AVENUE
WATERBURY    , CT 06708

CASE NUMBER 32344
189-06050-0239
06-335-00751908

October 1987

**IMPROVEMENT IN COVERAGE EXTENDED
TO OWNERS OF POLICY SERIES
247, 334 AND 335
AT NO INCREASE IN PREMIUM**

**Please Read This Carefully and Be Sure to Place It With Your Policy**

Dear Policyowner:

It is a privilege to tell you about an important coverage improvement.

Your policy is being improved to include a Treatment of Injuries provision at no additional cost. This provision reads as follows:

**TREATMENT OF INJURIES (PAYABLE IF DISABILITY BENEFITS NOT PAID)**
If Injuries require medical treatment prescribed by a Physician, we will pay your expenses for the treatment. But, we will not pay more than one half of one Monthly Benefit for Total Disability as a result of any one accident.

If you qualify for payment under this provision and also under a disability provision of this policy because of the same accident, payment will be made under the provision which provides the greater benefit.

The net effect of the addition of this provision is that, should you suffer an accident that does not result in total disability, you could still receive payment for expenses of medical treatment prescribed by a doctor.

This improvement applies to covered injuries resulting from periods of disability originating on or after October 1, 1987.

Should you wish a further explanation of this improvement in your coverage, or if you feel that your benefit amount needs to be brought up to date, please consult your insurance agent or call our local branch office.

Quality products and service have made Provident the nation's leading writer of long term, non-cancellable disability insurance. We pledge to you our continued effort to provide the finest protection available.

Sincerely,

John Barnes
Vice President

000007

A-30692 (6-87)          001348                                          NDI - IMP87

In this policy, the words "you" and "your" mean you, the Insured named below; "we," "our" and "us" mean Provident Life and Accident Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy.  Loss must begin while the policy is in force.

This policy is a legal contract between you and us.  It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application.  A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE TO AGE 65 AT GUARANTEED PREMIUMS:**  You can continue this policy to age 65 by paying premiums on time.  The premiums shown in the Policy Schedule on Page 3 are guaranteed to age 65.

**CONDITIONAL RIGHT TO RENEW AFTER AGE 65; PREMIUMS ARE NOT GUARANTEED:**  You can renew this policy as long as you are actively and gainfully working full time; there is no age limit.  You must pay premiums on time at our premium rates then in effect at time of renewals.  (For further conditions, see the page titled "Premiums and Renewals." See Page 7 for the benefit provisions that will be included in the continued policy.)

## D I S A B I L I T Y   I N C O M E   P O L I C Y

### WALTER SCOTT PETERSON MD, the Insured
### Policy Number 6-335-751908

**10 day right to examine your policy** - We want you to fully understand and be entirely satisfied with your policy.  If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt.  We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy.  It will be considered never to have been issued.

335

## GUIDE TO POLICY PROVISIONS

|  | Page |
|---|---|
| Renewal Conditions | 1 |
| Policy Schedule | 3 |
| Definitions (Injuries, Sickness, age, Physician, Total Disability, your occupation, period of disability, Elimination Period) | 4 |
| Exclusion | 5 |
| Pre-Existing Condition Limitation | 5 |
| Benefits | 5 |
| Total Disability | 5 |
| Presumptive Total Disability | 5 |
| Transplant Surgery | 6 |
| Cosmetic Surgery | 6 |
| Pregnancy | 6 |
| Waiver of Premium | 6 |
| Rehabilitation | 6 |
| Benefits When Policy Renewed After Age 65 | 7 |
| Payment for Part of Month | 7 |
| Additional Benefit | |
| Residual Disability (includes revised Waiver of Premium provision) | 8 |
| Premiums and Renewals | |
| Policy Term | 12 |
| Grace Period | 12 |
| Conditional Right To Renew After Age 65 – Premiums Are Not Guaranteed | 12 |
| Reinstatement | 12 |
| Suspension During Military Service | 13 |
| Premium Adjustment At Death | 13 |
| Claims | |
| Notice of Claim | 13 |
| Claim Forms | 13 |
| Proof of Loss | 13 |
| Time of Payment of Claims | 14 |
| Payment of Claims | 14 |
| Physical Examinations | 14 |
| Misstatement of Age | 14 |
| Legal Actions | 14 |
| General Provisions | |
| Entire Contract | 14 |
| Time Limit On Certain Defenses | 14 |
| Conformity With State Statutes | 14 |
| Assignment | 14 |
| Salary Allotment Premium Payment | 15 |

READ YOUR POLICY CAREFULLY

# P O L I C Y   S C H E D U L E

Insured – WALTER SCOTT PETERSON MD  Policy Number – 6-335-751908
Effective Date – December 1, 1986   First Renewal Date – December 1, 1987
Issue Date – December 31, 1986    Renewal Term – Twelve Months

Policy Premium – $6,734.71  (Annually) on a non smoking premium basis

Other Premium Paying Methods:
  $3,434.70 Semi-Annually
   1,751.02 Quarterly
    572.45 Monthly (Preauthorized Bank Draft Only)

------------------------MONTHLY BENEFIT FOR TOTAL DISABILITY------------------------

$11,950.00

------------------------------ELIMINATION PERIOD------------------------------

90 days of Total and/or Residual Disability

An Elimination Period starting after age 65
must consist entirely of days of Total Disability

------------------------------MAXIMUM BENEFIT PERIODS------------------------------

**Injuries:**
  Total Disability starting before age 65  .......................... for Life
  Total Disability starting at age 65 but before 75 ............. 24 months
  Total Disability starting at or after age 75  ...................... 12 months

**Sickness:**
  Total Disability starting before age 60  .......................... for Life
  Total Disability starting at age 60 but before age 61 ............. to age 65
  Total Disability starting at age 61 but before age 62 ............. 48 months
  Total Disability starting at age 62 but before age 63 ............. 42 months
  Total Disability starting at age 63 but before age 64 ............. 36 months
  Total Disability starting at age 64 but before age 65 ............. 30 months
  Total Disability starting at age 65 but before age 75 ............. 24 months
  Total Disability starting at or after age 75 ...................... 12 months

--------------------------------------------------------------------------------

Rehabilitation Expense  .................................. $35,850.00 Maximum Amount

------------------------------ADDITIONAL BENEFIT------------------------------
(The premium shown for this benefit is included in the Policy Premium shown above.)

Residual Disability Benefit ..........................Page 8    Premium $1,347.96

--------------------------------------------------------------------------------

DEFINITIONS

**Injuries** means accidental bodily injuries occurring while your policy is in force.

**Sickness** means sickness or disease which is first manifested while your policy is in force.

**age**, when used before a number, such as in "age 65", means the ending date of the policy term in which you attain that age.  A policy term is described on the page titled "Premiums and Renewals."

**Physician** means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

1.  you are not able to perform the substantial and material duties of your occupation; and

2.  you are receiving care by a Physician which is appropriate for the condition causing the disability.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.  If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

**period of disability** means a period of disability starting while this policy is in force.  Successive periods will be deemed to be the same period unless the later period:

1.  is due to a different or unrelated cause, or

2.  starts more than twelve months after the end of the previous period;

in which event, the later period will be a new or separate period of disability.  A new Elimination Period must then be met.  And, a new Maximum Benefit Period will apply.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable.  The number of days is shown on Page 3.  These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period.  Benefits are not payable, nor do they accrue, during an Elimination Period.

## EXCLUSION

We will not pay benefits for loss caused by war or any act of war, whether war is declared or not.

Additional exclusions, if any, appear in the Policy Schedule.

## PRE-EXISTING CONDITION LIMITATION

We will not pay benefits for loss starting within two years of the Effective Date of this policy which is caused by a Pre-existing Condition.  A claim for benefits for loss starting thereafter will not be reduced or denied on the ground it is caused by a Pre-existing Condition unless the condition is excluded by name or specific description.  Pre-existing Condition means a physical impairment, deformity or a medical condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this policy.  A medical condition means a sickness or physical condition which, within the five year period prior to the Effective Date of this policy, either:  1) resulted in your receiving medical advice or treatment; or 2) caused symptoms for which an ordinarily prudent person would seek medical advice or treatment.

## BENEFITS

**TOTAL DISABILITY**
We will pay the Monthly Benefit for Total Disability shown on Page 3 as follows:

1.  Benefits start on the day of Total Disability following the Elimination Period.
2.  Benefits will continue while you are totally disabled during the period of disability but not beyond the Maximum Benefit Period.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter.  We will pay benefits for the disability which provides the greater benefit.

**PRESUMPTIVE TOTAL DISABILITY – LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS**
You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:

1.  speech;
2.  hearing in both ears;
3.  the sight of both eyes; or
4.  the use of both hands, or of both feet or of one hand and one foot.

You must present satisfactory proof of your loss.  Your ability to work will not matter.  Further medical care will not be required.  Benefits will be paid according to the Total Disability provisions of this policy.  But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3.  If loss occurs before you attain age 65, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

## TRANSPLANT SURGERY
You might be disabled from the transplant of part of your body to another person. If so, we will consider it to be the result of a Sickness.

## COSMETIC SURGERY
You might be disabled from surgery to improve your appearance or to correct disfigurement. If so, we will consider it to be the result of a Sickness.

## PREGNANCY
You might be disabled from pregnancy or childbirth. If so, we will consider it to be the result of a Sickness.

## WAIVER OF PREMIUM
After you have been totally disabled for 90 days during a period of disability, we will:

   1.   refund any premiums which became due and were paid while you were totally disabled; and
   2.   waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep this policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

## REHABILITATION
Total Disability — Your participation in a program of occupational rehabilitation will not of itself be considered a recovery from Total Disability.

Expense — If, during a period of Total Disability, you participate in a program of occupational rehabilitation which we approve, we will pay for certain expenses you incur. That is, we will pay for the reasonable cost of training and education which is not otherwise covered under health care insurance, workers' compensation or any public fund or program. But, we will not pay more than the Maximum Amount for Rehabilitation Expense shown on Page 3.

A program of occupational rehabilitation must be designed to help you return to work and be:

   1.   a formal program of rehabilitation at an accredited graduate school, college or business school, or at a licensed vocational school;
   2.   a recognized program operated by the federal or a state government; or
   3.   any other professionally planned rehabilitation program of training or education.

**BENEFITS WHEN POLICY RENEWED AFTER AGE 65**

If this policy is continued in accordance with the "Conditional Right to Renew After Age 65" on Page 1, all of the benefit provisions on Pages 5, 6 and 7 will be included in the continued policy.  (Any additional benefit provision contained in this policy will not be included unless it is named on Page 3 as one that will be included in the continued policy.)  The Maximum Benefit Period starting while this policy is so continued is shown on Page 3.  The Monthly Benefit for Total Disability will not change unless you choose to renew with a lesser amount.

**PAYMENT FOR PART OF MONTH**

If any payment under this policy is for part of a month, the daily rate will be 1/30th of the payment which would have been made if disability had continued for the whole month.

RESIDUAL DISABILITY BENEFITS

with Recovery Benefits and with Cost of Living Indexing of Prior Monthly Income (Nothing in this provision limits the policy definition of "Total Disability.")

## DEFINITIONS

**Monthly Income** means your monthly income from salary, wages, bonuses, commissions, fees or other payments for services which you render. Normal and usual business expenses are to be deducted; income taxes are not. Monthly Income must be earned. It does not include dividends, rents, royalties, annuities or other forms of unearned income.

Monthly Income can be credited to the period in which it is actually received or to the period in which it is earned. We allow either the cash or accrual accounting method. But, the same method must be used to determine the Prior Monthly Income and the Current Monthly Income during a period of disability.

**Prior Monthly Income** means the greatest of:

1. your average Monthly Income for the 12 months just prior to the start of the period of disability for which claim is made;
2. your average Monthly Income for the year with the highest earnings of the last two years prior to the start of such period of disability; or
3. your highest average Monthly Income for any two successive years of the last five years prior to the start of such period of disability.

**Current Monthly Income** means your Monthly Income for each month of Residual Disability being claimed.

**Loss of Monthly Income** means the difference between Prior Monthly Income and Current Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for which claim is made. The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income. If your loss is more than 75% of Prior Monthly Income, we will deem the loss to be 100%.

**Residual Disability or residually disabled,** during the Elimination Period, means that due to Injuries or Sickness:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2. you have a Loss of Monthly Income in your occupation of at least 20%; and
3. you are receiving care by a Physician which is appropriate for the condition causing the disability.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time. **Residual Disability or residually disabled** then means that due to Injuries or Sickness:

1. you have a Loss of Monthly Income in your occupation of at least 20%; and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

---

335-RES            WALTER SCOTT PETERSON MD        6-335-751908                Page 8

000015

**Monthly Benefit for Total Disability** is shown on Page 3.  (It can be increased by certain other benefit provisions if they are included in your policy and are applicable.  If included, they are titled "Cost of Living Adjustments of Monthly Benefits" and "Social Insurance Substitute Benefit.")

**Residual Disability Monthly Benefit** is the benefit payable under this provision.  It is determined monthly by this formula.  Each month, it equals:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability}$$

## RESIDUAL DISABILITY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

1.  Benefits start on the day of Residual Disability following the Elimination Period or, if later, after the end of compensable Total Disability during the same period of disability.
2.  Benefits will continue while you are residually disabled during a period of disability but the combined period for which benefits for Total and Residual Disability are payable can not exceed the Maximum Benefit Period.  And, benefits will not be payable after you attain age 65.
3.  The first six monthly payments for Residual Disability will be the greater of:
    a.  50% of the Monthly Benefit for Total Disability; or
    b.  the Residual Disability Monthly Benefit determined for each month.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

In no event will you be considered to have more than one disability at the same time.  The fact that a disability is caused by more than one Injury or Sickness or from both will not matter.  We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Monthly Income and Prior Monthly Income.  Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

## RECOVERY BENEFITS

If you are under age 65 and return to gainful full-time work at the end of a period for which we have paid Total and/or Residual Disability benefits, we will:

1.  while you are so engaged in gainful full-time work; and
2.  while you are having a Loss of Monthly Income of at least 20% due to the same Injuries or Sickness;

pay benefits under this back to work provision as though the same period of disability is continuing.  Payments will be made for each month, up to 3 months, in which (1) and (2) exist.  For the first such month, we will pay a benefit based on the greater of:

---

335-RES          WALTER SCOTT PETERSON MD     6-335-751908          Page 9

000016

a. the monthly rate computed by the Residual Disability Benefit formula for that month; or
b. 100% of the actual claim payment made for the 30 days preceding your return to work full time.

The monthly benefit for the second and third months will be computed as in (a) and (b) above; except that, instead of using 100% in (b), 75% will apply for the second month. And, 50% will apply for the third month.

These recovery benefits will not be paid for any days for which Total and/or Residual Disability benefits are paid. And, they will not be paid for more than 3 months in connection with a period of disability.

## COST OF LIVING INDEXING OF PRIOR MONTHLY INCOME
### (Applicable to benefits paid after the 12th month of a period of disability)

### Definitions

**CPI-U** means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

**Review Date** means each anniversary date of the start of a period of disability.

**Review Period** means a one year period ending on a Review Date.

**Index Month** means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

**Index Factor** is used by us to determine your adjusted Prior Monthly Income for each Review Period. We will compute this factor by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.

### Adjusted Prior Monthly Income

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date for Residual Disability Benefits. Monthly benefits which thereafter accrue during that period of disability will be adjusted by indexing your Prior Monthly Income as follows:

1. On each Review Date, your Prior Monthly Income will be multiplied by your Index Factor. The result is your adjusted Prior Monthly Income. It will be used to figure your Loss of Monthly Income during the Review Period that follows. It will also be used in the formula to compute each Residual Disability Monthly Benefit payable during that Review Period.

---

335-RES              WALTER SCOTT PETERSON MD      6-335-751908              Page 10

An increase in your Prior Monthly Income can cause your Loss of Monthly Income to be greater. This in turn can result in an increase in your Residual Disability Monthly Benefit. Other than your Index Factor (which is computed by using actual CPI-U values), there is no limit on the percent of increase in your Prior Monthly Income for a Review Period. If the CPI-U should go down, your adjusted Prior Monthly Income can decrease. But, it can never reduce below your Prior Monthly Income at the start of the period of disability.

2. Indexing of your Prior Monthly Income will end on the earliest of:

    a. the end of the period of disability (see Page 4);
    b. the end of a benefit period; or
    c. the date you attain age 65.

If the computations end because of a or b above, disability benefits which can be paid for the first 12 months of a new period of disability will not include a Cost of Living Adjustment. A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

## WAIVER OF PREMIUM

For periods of disability which start before age 65, the Waiver of Premium provision on Page 6 is replaced by the following:

### "WAIVER OF PREMIUM - TOTAL DISABILITY AND RESIDUAL DISABILITY

If, during a period of disability, Injuries or Sickness results in more than 90 days of Total and/or Residual Disability, we will:

1. refund any premiums which became due and were paid while you were so disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability except as respects Recovery Benefits."

NOTE: All portions of this Residual Disability Benefit expire when you attain age 65 even though the policy may be renewed after you attain age 65. No further premiums for it will be due.

PREMIUMS AND RENEWALS

## POLICY TERM
The first term of this policy starts on the Effective Date shown on Page 3.  It ends on the First Renewal Date also shown.  Later terms will be the periods for which you pay renewal premiums when due.  All terms will begin and end at 12:01 A.M., Standard Time, at your home.  The renewal premium for each term will be due on the day the preceding term ends, subject to the grace period.

## GRACE PERIOD
This policy has a 31 day grace period.  This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days.  During the grace period, the policy will stay in force.

## CONDITIONAL RIGHT TO RENEW AFTER AGE 65; PREMIUMS ARE NOT GUARANTEED
(Continued from Page 1)
You can renew this policy as long as you are actively and gainfully working full time. From time to time, we can require proof that you are actively and gainfully working full time.  If you stop working, (except by reason of Total Disability), this policy will terminate; except that coverage will continue to the end of any period for which premium has been accepted.

Premiums must be paid on time.  They will be based on our table of rates by attained age in effect at time of renewals for persons in your same rate class who are insured under policies of this form.  Other than your attained age, the factors used to determine your rate class will be the same as those that applied to you on the Effective Date of this policy.

The benefit provisions which will be included in this policy, if it is continued after you attain age 65, are described on Page 7.

## REINSTATEMENT
If a renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt for the premium tendered.  If the application is approved, the policy will be reinstated as of the approval date.  Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which is first manifested more than 10 days after such date.  In all other respects, your rights and ours will remain the same, subject to any provisions noted on or attached to the reinstated policy.

## SUSPENSION DURING MILITARY SERVICE

If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy.  But, you may not suspend the policy during active duty for training lasting 3 months or less.  The policy will not be in force while it is suspended, and you will not be required to pay premiums.  Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before age 65, you may place this policy back in force without evidence of insurability.  Your coverage will start again when:

1. we have received your written request to place the policy back in force; and
2. you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends.  Premiums will be at the same rate that they would have been had your policy remained in force.  The policy will not cover any loss due to Injuries which occur or Sickness which is first manifested while the policy is suspended.  In all other respects you and we will have the same rights under the policy as before it was suspended.

## PREMIUM ADJUSTMENT AT DEATH

Any premium paid for a period beyond the date of your death will be refunded to your estate.

## CLAIMS

## NOTICE OF CLAIM

Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible.  The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent.  Notice should include your name and the policy number.

## CLAIM FORMS

When we receive your notice of claim, we will send you claim forms for filing proof of loss.  If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss.  You must give us this proof within the time set forth in the Proof of Loss section.

## PROOF OF LOSS

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable.  For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible.  In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

**TIME OF PAYMENT OF CLAIMS**
After we receive written proof of loss, we will pay monthly all benefits then due you for disability.  Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

**PAYMENT OF CLAIMS**
Benefits will be paid to you.  Any benefits unpaid at death will be paid to your estate.

If benefits are payable to your estate, we can pay benefits up to $1000 to someone related to you by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payment made in good faith.

**PHYSICAL EXAMINATIONS**
We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending.

**MISSTATEMENT OF AGE**
If your age has been misstated, the benefits will be those the premium paid would have bought at the correct age.

**LEGAL ACTIONS**
You may not start a legal action to recover on this policy within 60 days after you give us required proof of loss.  You may not start such action after three years from the time proof of loss is required.

## GENERAL PROVISIONS

**ENTIRE CONTRACT**
This policy with the application and attached papers is the entire contract between you and us.  No change in this policy will be effective until approved by one of our officers.  This approval must be noted on or attached to this policy.  No agent may change this policy or waive any of its provisions.

**TIME LIMIT ON CERTAIN DEFENSES**
We cannot contest this policy, except for nonpayment of premium, after it has been in force for two years from its Effective Date.

**CONFORMITY WITH STATE STATUTES**
Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you reside on that date is changed to conform to the minimum requirements of those laws.

**ASSIGNMENT**
No assignment of interest in this policy will be binding on us until a copy is on file with us.  It must be approved by one of our officers.  We are not responsible for the validity of any assignment.

## SALARY ALLOTMENT PREMIUM PAYMENT

In consideration of the Salary Allotment Agreement between your employer and us, we agree to accept Policy Premiums as billed to your employer.

The conditions of this rider are:

1.  The policy will not continue in force beyond the time for which the premium is paid, subject to the grace period.

2.  If your employer fails to pay premiums when due because of clerical error or negligence, your insurance under the policy will not be prejudiced.

3.  This rider will be void if:

    a.  your employment with your employer ends;

    b.  the Salary Allotment Agreement is terminated; or

    c.  for any reason, your employer fails to pay premiums.

4.  If this rider is voided, premiums will be due and payable as required in the policy.

Provident Life and Accident Insurance Company
Chattanooga, TN 37402

AMENDMENT OF APPLICATION

In consideration of the issuance of the policy to which this amendment is attached, it is understood and agreed that my signed application dated October 13, 1986, is amended as follows:

The answers to Parts (a), (b), (c), (d), (e), and (f) are changed to those shown below.

5 (a) Do you have or are you applying for other: (1) Individual, (2) Association, (3) Group, or (4) Employer Sick Pay disability income coverage; or (5) Overhead Expense disability coverage? Yes (X) No ( ) (If "Yes" give details below)

| Company or Source | Type (1,2,3,4 or 5) | Monthly Disability Amount | Benefit Period Accident/Sickness |
|---|---|---|---|
| *MASS MUTUAL | 1 | $968.00 | LIFE   LIFE |
| *GUARDIAN | 1 | $3,500.00 | LIFE   LIFE |

  * WILL BE PERMANENTLY CANCELLED WITHIN 30 DAYS OF THE ISSUE DATE OR EFFECTIVE DATE OF THE POLICY ISSUED PURSUANT TO THIS APPLICATION, WHICHEVER IS LATER.

(b) Do you have Social Security substitute coverage? Yes ( ) No (X)

(c) Is any coverage to be replaced by the coverage applied for?  Yes (X) No ( ) If "Yes", complete Form 1335-Q5.

(d) What is the total personal non-group life insurance in force or applied for on your life? $500,000

(e) Does your net worth exceed $4,000,000? Yes ( ) No (X) If "Yes" complete Form 1335-NW.

(f) Have you smoked cigarettes within the last 12 months? Yes ( ) No (X)

Signed at _____

              City             State

this____ day of_____19____ Signature X _____

1251-AM(Q5)1335        WALTER SCOTT PETERSON MD     6-335-751908          Accident Dept.

000023

No 354878

I hereby apply to Provident Life and Accident Insurance Company for insurance based on the following representations:

**1. (a)** Full name?
(Print)  WALTER  SCOTT  PETERSON  M.D.
**(b)** Sex? M ☒ F ☐

**(c)** Height? ft. 6 in. 0  **(d)** Weight? lbs. 218  **(e)** Date of Birth? 9-5-44  **(f)** Birthplace? NEWTON, KANSAS

**2. (a)** Residence Address: CENTRAL ROAD, MIDDLEBURY, CT. 06762
(Print)       Street and No. (or P.O. Box No.)       City,       State,       Zip Code
**(b)** Business Address: 87 GRANDVIEW AVENUE, WATERBURY, CT. 06708

Send Notices:
☐ Residence
☒ Business

**3. (a)** Occupation: OPTHALMIC SURGEON  **(b)** Employer: EYE ASSOCIATES OF WATERBURY, P.C.
**(c)** Exact duties: EYE SURGERY  **(d)** Social Security No. 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
**(e)** Are you actively at work fulltime in the above occupation? Yes ☒ No ☐  **(f)** Length of Employment: 10 YEARS

**4. (a)** Annual Earned Income From Your Occupation for Federal Tax Purposes (After Business Expenses, if any):

|  | Current Annual Rate of Earned Income | Actual Prior Calendar Year | Actual Year Prior to Last Calendar Year |
|---|---|---|---|
| Salary | $ 268,500 | $ 215,860 | $ 162,210 |
| Other (Describe) | $ 51,500 | $ 65,169 | $ 46,528 |
| **(b)** Unearned Income Prior 2 Years (Interest, Dividends, etc.) | $19,000 | $ 281,029 | $ 208,738 |

**5. (a)** Do you have or are you applying for other: (1) Individual, (2) Association, (3) Group, or (4) Employer Sick Pay disability income coverage; or (5) Overhead Expense disability coverage? Yes ☒ No ☐ (If "Yes" give details below)

| Company or Source | Type (1, 2, 3, 4 or 5) | Monthly Disability Amount | Benefit Period Accident | Sickness |
|---|---|---|---|---|
| MASS MUTUAL | 1 | 968.00 | LIFE | LIFE |
| GUARDIAN | 1 | 3,500.- | LIFE | LIFE |
|  |  |  |  |  |

**(b)** Do you have Social Security substitute coverage? Yes ☒ No ☐ Amount $ 868.00 Company MASS MUTUAL
**(c)** Is any coverage to be replaced by the coverage applied for? Yes ☐ No ☒. If "Yes", complete Form 1335-Q5.
**(d)** What is the total personal non-group life insurance in force or applied for on your life? 500,000
**(e)** Does your net worth exceed $4,000,000? Yes ☐. No ☒. If "Yes" complete Form 1335-NW.
**(f)** Have you smoked cigarettes within the last 12 months? Yes ☐ No ☒

(Q6-8 need not be answered if a Provident Medical Exam, dated on or after the date of this application, is being furnished)
**6.** Have you ever been treated for or ever had any known indication of:

|  | Yes | No |
|---|---|---|
| **(a)** High blood pressure, diabetes, cancer, arthritis, asthma, emphysema, or emotional, nervous or mental disorder, or disease or disorder of the eyes, ears or speech? | ☐ | ☐ |
| **(b)** Disease or disorder of the neck, back, spine, heart, lungs, breasts, or the circulatory, digestive, urinary or reproductive systems? | ☐ | ☐ |
| **7.** Other than above, have you, within the past 5 years, had medical or surgical advice or treatment, had a physical examination, or been under observation for any disease or disorder? | ☐ | ☐ |
| **8.** Do you have a physical impairment or deformity, or take any type of prescribed medication? | ☐ | ☐ |

(Give details of "Yes" answers to Q6-8. Include diagnoses, dates, physicians and addresses)

**9. (a)** Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income? Yes ☒ No ☐ **(b)** How much premium is paid with this application?

To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II, if any, of this Application are true, complete, and correctly stated. They are offered to Provident Life and Accident Insurance Company as the basis for any insurance issued on this Application. I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organizations, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Accident Insurance Company and/or its reinsurers any such information.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Accident Insurance Company to collect and send such information.

A copy of this authorization shall be as valid as the original.

Signed at WATERBURY  CT
        City       State
this 13 day of October 19 86

Field Office: NEW HAVEN

Signature of
Proposed Insured X _Walter Scott Peterson_

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

_John Walsh_
(Licensed Agent's or Broker's Signature)
No. 0825956

Form 1335  06050  0239  IEO

000024

**PROVIDENT LIFE AND ACCIDENT**
INSURANCE COMPANY
CHATTANOOGA, TN 37402

**ANSWERS MADE TO EXAMINER**
IN CONTINUATION OF AND FORMING PART OF APPLICATION FOR INSURANCE TO
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Chattanooga, Tennessee 37402.

Full Name of Person Examined
(Last) **Peterson**   (First) **Walter**   (Middle) **Scott**   Date of Birth **9.5.44**   Occupation **MD**

1. a. Name and address
   of your personal physician (If none, ☒ Check)_____

   b. Date and reason last consulted?_____

   c. What treatment was given or medication prescribed?_____

2. Have you ever been treated for or ever had any known indication of:

|   | | Yes | No |
|---|---|---|---|
| a. Disorder of eyes, ears, nose, or throat? | | ☐ | ☒ |
| b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? | | ☐ | ☒ |
| c. Shortness of breath, persistent hoarsness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | | ☐ | ☒ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | | ☐ | ☒ |
| e. Jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? | | ☐ | ☒ |
| f. Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? | | ☐ | ☒ |
| g. Diabetes; thyroid or other endocrine disorders? | | ☐ | ☒ |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? | | ☐ | ☒ |
| i. Deformity, lameness or amputation? | | ☐ | ☒ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? | | ☐ | ☒ |
| k. Allergies; anemia or other disorder of the blood? | | ☐ | ☒ |
| 3. Are you now under observation or taking treatment? | | ☐ | ☒ |
| 4. Have you had any change in weight in the past year? | | ☐ | ☒ |

5. Other than above, have you within the past 5 years:

| | Yes | No |
|---|---|---|
| a. Had any mental or physical disorder not listed above? | ☐ | ☒ |
| b. Had a checkup, consultation, illness, injury, surgery? | ☐ | ☒ |
| c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☒ |
| d. Had electrocardiogram, X-ray, other diagnostic test? | ☐ | ☒ |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☒ |

| | Yes | No |
|---|---|---|
| 6. Have you ever regularly used barbiturates, narcotics, excitants or hallucinogens or ever sought treatment or been arrested for their use? | ☐ | ☒ |
| 7. Have you ever sought help or treatment for alcoholic habit? | ☐ | ☒ |
| 8. a. Have you ever had any disorder of menstruation, pregnancy or of the reproductive organs or breasts? | ☐ | ☒ |
| b. To the best of your knowledge and belief, are you now pregnant? | ☐ | ☒ |
| 9. Have you ever had military service deferment, rejection or discharge because of a physical or mental condition? | ☐ | ☒ |
| 10. Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? | ☐ | ☒ |
| 11. Family History: (Father, Mother, Brothers, Sisters) Tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? | ☐ | ☒ |

DETAILS of "Yes" answers.
**IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS:** Include diagnoses, dates, duration, names and addresses of all attending physicians and medical facilities.

(For additional comments, use back side)

| a. | Age if Living? | Age at Death? | Cause of Death? | b. | Number Living? | Number Dead? | Age if Living? | Age at Death? | Cause of Death? |
|---|---|---|---|---|---|---|---|---|---|
| Father | 70 | | | Brothers | | | | | |
| Mother | 74 | | | Sisters | | | | | |

The foregoing statements are full, complete, and true to the best of my knowledge and belief.   Dated at **Waterbury Ct**

PARAMEDICAL ORGANIZATION
(Please stamp or type below)

**BODIMETRICS**
P. O. BOX 769
AVON, CT 06001     000025

this **15** day of **October** 19**86**
(X) X **Walter Scott**
Signature of person examined

Witness (X) **Holly Sansonie LDN**
Signature of Examiner     Degree